(732 P.2d 780)

No. 58,721

STATE OF KANSAS, *Appellee*, v. TERRY BREWER, *Appellant*.

Petition for review denied April 10, 1987.

Opinion filed February 12, 1987.

*Jessica R. Kunen*, deputy appellate defender, and *Benjamin C. Wood*, chief appellate defender, for the appellant.

*David R. Heger*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before Briscoe, P.J., Rees and Brazil, JJ.

Briscoe, J.: This is a direct appeal by the defendant, Terry Brewer, from his conviction by a jury of two counts of arson and one count of theft by deception, K.S.A. 21-3718 and 21-3701(b). Defendant was charged with setting a fire to a house in Osawatomie, Kansas, which defendant and his family were renting. Defendant subsequently submitted a claim to State Farm Fire and Casualty Company and recovered payment from State Farm for the loss of the contents of the house.

Defendant's first issue involves the State's questioning of defendant's wife at an inquisition. Specifically, defendant contends (1) he was prejudiced by the State's improper use of an inquisition to "discover" his wife's testimony prior to her testifying at trial; and (2) the due process rights of both he and his wife were violated when the State failed to provide his wife with counsel at her inquisition. As a factual aside, we note at both her inquisition and at trial defendant's wife consistently denied her husband's involvement in the crimes charged.

Inquisitions are generally used for gathering information to determine whether probable cause exists to support a criminal prosecution. An inquisition may also be used, however, to obtain sworn testimony following an indictment. *State v. Hobson*, 234 Kan. 133, 143, 671 P.2d 1365 (1983); *State v. McQueen & Hardyway*, 224 Kan. 420, 582 P.2d 251 (1978); *Southwestern Bell Tel. Co. v. Miller*, 2 Kan. App. 2d 558, 583 P.2d 1042, *rev. denied* 225 Kan. 845 (1978). This court, in fact, has previously held that an inquisition can be used to obtain testimony whenever an individual is believed to have information concerning criminal activity. *Southwestern Bell Tel. Co. v. Miller*, 2 Kan. App. 2d at 561. In the present case, the State did not use the inquisition for improper purposes.

As regards defendant's due process arguments, the State concedes that it acted improperly in not allowing defendant's wife to confer with counsel. Under K.S.A. 22-3104, inquisition witnesses

must be informed of their right to counsel and no questioning is permitted until counsel is present once counsel has been requested. Defendant's wife in the present case requested counsel but her request was refused. The State based its refusal on the assumption that counsel would be unavailing because defendant's wife had been granted immunity from prosecution and could not therefore claim her privilege against self-incrimination. The State now concedes its conduct was improper but argues that defendant has no standing to complain.

Defendant claims he has standing to raise this issue because the State elicited privileged marital communications during the inquisition. To remedy this alleged violation of his due process rights, defendant seeks a new trial with direction to the trial court to exclude his wife's testimony from the State's case in chief. Upon our review of the inquisition transcript, we find no reference in his wife's testimony to privileged marital communications. In addition, the presence of counsel at his wife's inquisition was for his wife's benefit, not to safeguard defendant's rights. The defendant has no standing to assert a violation of his wife's constitutional rights. Further, an exclusion of defendant's wife's testimony does not appear to be a necessary remedy even had the State impinged on defendant's marital privilege. The defendant could have adequately protected his rights by objecting at trial to the admission of any communication which he believed to be privileged.

As his second issue, defendant contends his due process rights were violated by the State's grants of immunity for perjury committed by two of the State's witnesses.

The Kansas immunity statute, K.S.A. 22-3415, provides in part:

"The county or district attorney or the attorney general may at any time, on behalf of the state, grant in writing to any person immunity from prosecution or punishment on account of any transaction or matter contained in any statement or about which such person shall be compelled to testify and such statement or testimony shall not be used against such person in any prosecution for a crime under the laws of Kansas or any municipal ordinance. After being granted immunity from prosecution or punishment, as herein provided, no person shall be excused from testifying on the ground that his testimony may incriminate him unless such testimony is a violation of federal law. *He shall not be granted immunity from prosecution for perjury or false statement or any other crime committed in giving such evidence."* Emphasis added.

On appeal, defendant contends the State violated this statute by granting Michael and Lavonne Rutledge immunity for perjury committed earlier at defendant's preliminary hearing. According to defendant, the last sentence of the statute precludes the State from ever granting immunity for perjury. Defendant argues that the exclusion of perjury from the immunity statute is necessary to prevent the State from encouraging witnesses to alter their testimony. The State, on the other hand, argues the language of the statute only prevents the State from granting immunity for perjury committed while testifying under the grant of immunity.

Contrary to defendant's reading of the case, *State v. Bryant,* 228 Kan. 239, 613 P.2d 1348 (1980), does not stand for the proposition that immunity can never be granted for perjury. In *Bryant,* the Kansas Supreme Court concluded that K.S.A. 22-3415 precluded the State from granting immunity for perjury committed while testifying under a grant of immunity. As both parties rely on *Bryant* for support of their respective positions, we will briefly describe the facts and the holding of that case.

Craig Bryant was convicted of aggravated robbery based in part on the testimony of Clarence Ferguson, who placed Bryant at the scene of the crime. *Ferguson testified under a grant of immunity at Bryant's trial.* Several months after Bryant's conviction, Ferguson recanted his testimony and Bryant moved for a new trial. At the hearing on Bryant's new trial motion, Ferguson refused to testify and asserted his Fifth Amendment privilege. Ferguson refused to testify and recant his trial testimony because by testifying he would have admitted his prior testimony was perjured. On appeal, Bryant argued the State should have been required to grant Ferguson immunity for any perjury he may have committed when he testified under a grant of immunity at Bryant's trial. The Kansas Supreme Court rejected the argument and concluded: "Clearly, the statute precluded the State from granting immunity to Ferguson for perjury in Bryant's trial." 228 Kan. at 247. That is, the State clearly could not grant Ferguson immunity for perjury committed while testifying under a grant of immunity. A grant of immunity for perjury committed while testifying under a grant of immunity is forbidden by the statute. The State could not do later at the hearing on the motion for new

trial what it could not do when Ferguson testified initially at Bryant's trial.

We conclude the clear language of the statute, K.S.A. 22-3415, and the holding in *Bryant* forbid the granting of immunity for perjury committed while testifying under a grant of immunity. Dicta in *In re Birdsong*, 216 Kan. 297, 302-03, 532 P.2d 1301 (1975), also supports this conclusion. Although *Birdsong* addressed the issue of whether immunity granted pursuant to K.S.A. 22-3415 would protect a defendant against subsequent prosecution for violation of federal laws, the court stated the following in its analysis of what protections were *excluded* under a grant of immunity: "The giving of testimony can be a violation of [federal] law when it is perjured. However, the final sentence in the statute withholds immunity for any crime committed in giving such testimony, such as perjury or false statement." *Birdsong*, 216 Kan. at 302-03. Since K.S.A. 22-3415 only limits the State's power to grant immunity for perjury committed while testifying under a grant of immunity, the State *can* grant immunity for perjury committed at other times. Similar statutory language has been considered by the federal courts, who have also adopted the position that immunity can be granted for prior perjury.

In *United States v. Alter*, 482 F.2d 1016, 1028 (9th Cir. 1973), the court considered the language of 18 U.S.C. § 6002 (1982):

"Section 6002 provides that a grand jury witness given use and derivative use immunity cannot rely on his privilege against self-incrimination to refuse to testify,
'but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, *except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.*' (Emphasis added.)
We accept the Government's construction of section 6002 as it applies to Alter:
'[T]he phrase beginning with "or otherwise" as underlined above, modifies the meaning of the preceding quoted phrase beginning with "except." The concluding phrase indicates that the compelled testimony may be used in prosecutions for giving false statements in response to the command to testify. But for the "exception" quoted here, all testimony given in compliance with the command to testify cannot be used, as proscribed under the preceding language of the immunity grant. . . . [T]he testimony which appellant might

have given could not be used against him in any prosecution for any false statements made to anyone outside of the grand jury.' "

See *Kastigar v. United States*, 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653, *reh. denied* 408 U.S. 931 (1972). The federal court's resolution of this issue was not based exclusively on principles of statutory construction. Instead, the federal court recognized underlying constitutional considerations.

The Fifth Amendment to the United States Constitution provides that no person shall be compelled to be a witness against himself. As a result, the prosecution may not compel incriminating testimony unless and until it removes the Fifth Amendment privilege by granting the witness immunity from prosecution. In order for the grant of immunity to be effective, however, the immunity must be coextensive with the scope of the Fifth Amendment. In other words, the immunity must insulate the witnesses as to all prior criminal conduct. *Kastigar v. United States*, 406 U.S. 441; *In re Birdsong*, 216 Kan. at 299-300.

In *Alter*, the federal court recognized that the grant of immunity must include prior perjury if it is to be effective to compel a witness to testify. If prior perjury were not included, the immunity would not be coextensive with the Fifth Amendment and testimony could not be compelled. The prosecution's use of the immunity statute would therefore be severely limited if immunity could not be granted for prior perjury. See *In re Grand Jury Proceedings*, 509 F.2d 1349 (5th Cir. 1975).

Applying these same considerations to the Kansas immunity statute, we conclude the State acted within the statute and did not violate defendant's due process rights in granting the Rutledges immunity for perjury committed at defendant's preliminary hearing.

Defendant next contends his due process rights were violated by the possibility of perjured testimony. We are cognizant of the premise that a conviction based on perjured or false evidence is a violation of due process, even in cases where the perjury or false evidence was not induced by the prosecution. *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959). This rule has no bearing in the present case, however, because defendant is unable to demonstrate that any perjury occurred. A mere possibility that perjury occurred is insufficient to cause reversal of defendant's convictions.

As his next issue, defendant asks us to determine whether the charges against him were multiplicitous. He was charged with arson under K.S.A. 21-3718(1)(a) and (b). He was also charged with theft by deception under 21-3701.

Arson is defined in K.S.A. 21-3718 as follows:

"(1) Arson is knowingly, by means of fire or explosive:

"(a) Damaging any building or property in which another person has any interest without the consent of such other person; or

"(b) Damaging any building or property with intent to injure or defraud an insurer or lienholder.

"(2) Arson is a class C felony."

In count one, defendant was charged with arson under subsection (1)(a). To be convicted, the jury was required to determine:

"1. That the defendant intentionally damaged the building of D.L. Polley at 907 4th Street, Osawatomie, Kansas, by means of fire;

"2. That the defendant did so without the consent of D.L. Polley; and

"3. That this act occurred on or about the 21st day of August, 1983, in Miami County, Kansas."

Defendant was also charged with arson under subsection (1)(b) for damage to his own property with intent to defraud his insurer. To be convicted under count two, the jury was required to establish:

"1. That the defendant intentionally damaged property inside a house located at 907 4th Street, Osawatomie, Kansas, by means of fire;

"2. That State Farm Fire and Casualty Company was an insurer of the property;

"3. That the defendant did so with the intent to defraud State Farm Fire and Casualty Company; and

"4. That this act occurred on or about the 21st day of August, 1983, in Miami County, Kansas."

Finally, defendant was charged under count three with theft by deception, K.S.A. 21-3701. To be convicted, the jury was required to find:

"1. That State Farm Fire and Casualty Company was the owner of the property;

"2. That the defendant obtained by deception unauthorized control over the property;

"3. That the defendant intended to deprive State Farm Fire and Casualty Company permanently of the use or benefit of the property;

"4. That the value of the property was one hundred dollars ($100) or more; and

"5. That this act occurred between August 22, 1983, and September 9, 1983, in Miami County, Kansas."

On appeal, defendant maintains that these three convictions were multiplicitous and therefore improper. Multiplicity is defined as the charging of a single offense as two or more separate crimes, and is considered improper because a single wrongful act should not be punished more than once. *State v. Dorsey*, 224 Kan. 152, 154-55, 578 P.2d 261 (1978); *State v. Stoops*, 4 Kan. App. 2d 130, 136, 603 P.2d 221 (1979). The difficulty in the present case surrounds the definition of multiplicity. In prior case law dealing with the concept of multiplicity, both the Kansas Supreme Court and the Court of Appeals have stated that "the test to be applied in determining whether more than one offense can be charged as a result of a single act is whether each offense requires proof of a fact that is not required by another." *State v. Stoops*, 4 Kan. App. 2d at 138. See *State v. Thornton*, 224 Kan. 127, 130, 577 P.2d 1190 (1978); *State v. Lassley*, 218 Kan. 758, 545 P.2d 383 (1976).

Applying the above definition to the present case, it is clear that each crime requires proof of an additional fact not required of the other. K.S.A. 21-3718(1)(a) and (1)(b) each require proof of a fact not required by the other. To convict under 21-3718(1)(a), the State must prove that another person had an interest in the damaged property and that such person did not consent to the damaging of the property. Subsection (1)(b) requires proof of neither of those facts. To convict under (1)(b), the State must show that the damaged property was insured and that the damage was done with the intent to defraud the insurer. Neither of those facts is required under subsection (1)(a). Because each of the offenses with which the defendant was charged requires proof of a fact not required by the other offense, his charges under K.S.A. 21-3718(1)(a) and (1)(b) are not multiplicitous.

Likewise, the crime of theft by deception clearly requires proof different from arson under subsection (1)(a). Theft by deception is also distinct from arson under (1)(b) because a person may be convicted of the arson charge without actually obtaining the insurance proceeds. Defendant does not dispute these conclusions but instead argues that the test to determine multiplicity is improper and should be overruled. According to

defendant, Kansas courts have confused the test for multiplicity with that for lesser included offenses. Defendant contends multiplicity is a broader concept. We agree that multiplicity is a broader concept, but not as broad as defendant contends.

Defendant supports his position by citing *State v. Thornton*, 224 Kan. 127. In that case, the defendant contended the trial court erred in allowing the prosecution to charge and convict the defendant on both sale of marijuana and possession with intent to sell the same marijuana. The Kansas Supreme Court agreed and held that, while the court had held in the past that possession of marijuana was not a lesser included offense of the sale of marijuana, the crimes of possession with intent to sell marijuana and sale of marijuana were nonetheless multiplicitous or "merged" where the sale was consummated. According to the court, proof of the crime of sale of marijuana necessarily proved the crime of possession with intent to sell marijuana. From this and similar authority, defendant argues that a person should not be convicted of multiple crimes arising out of a single course of conduct. This definition, however, is too broad and has in fact been specifically rejected by the Kansas Supreme Court. In *State v. Pencek*, 224 Kan. 725, 728, 585 P.2d 1052 (1978), the court held that "[c]ulpable conduct of a defendant, although constituting a single transaction, may result in multiple violations of the criminal code for which defendant may be severally prosecuted."

The correct definition of multiplicity is provided by statute, specifically K.S.A. 1986 Supp. 21-3107. This statute provides in part:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(a) A lesser degree of the same crime;

"(b) an attempt to commit the crime charged;

"(c) an attempt to commit a lesser degree of the crime charged; or

"(d) *a crime necessarily proved if the crime charged were proved.*" (Emphasis added.)

Under this statute, a person cannot be convicted of two or more

separate crimes if one is either a lesser included, *or a crime necessarily proved by proof of another crime.* Applying this test to the present case, we conclude the crimes charged were neither lesser included offenses nor crimes proven by proof of the other.

As his last issue, defendant contends the trial court erred in sentencing defendant and in denying his request for probation. Specifically, defendant complains that (1) the sentence imposed was predicated on false information in the presentence and SDRC reports; (2) the trial court abused its discretion by not making a record of the factors it considered; (3) the trial court improperly imposed a consecutive sentence; and (4) the trial court improperly denied probation. We find no error.

(1) Defendant contends the presentence report contained false information because it listed as prior offenses charges arising out of the same incident which were filed and later dismissed or not prosecuted. Defendant argues the presentence investigator may have assumed defendant had engaged in prior acts of arson and this may have prejudiced his evaluation. Defendant also maintains that, because the SRDC report relied on the presentence report, the SRDC evaluator may have based his recommendation on the same misinformation. This argument is not persuasive.

The presentence report noted that the prior criminal charges had been dismissed or had not been prosecuted. There is no indication the investigator was under any misconception concerning these prior charges. In addition, the SRDC report contains no indication that the evaluator's recommendation was influenced by any misconception about defendant's prior criminal charges. Defendant bears the burden of proving that his right to due process was violated because his sentence resulted from inaccurate information. *Shelton v. United States,* 497 F.2d 156, 160 (5th Cir. 1974); *State v. Grantom,* 229 Kan. 517, 519, 625 P.2d 499 (1981). Defendant has failed to meet this burden. Further, the court could not have imposed a lesser sentence because the defendant received the minimum sentence on all counts. Finally, we note this issue is raised for the first time on appeal, despite the fact counsel had the opportunity to review the presentence report prior to sentencing and the SRDC report prior to defendant's modification hearing. On neither occasion

did defendant complain that the reports contained inaccuracies. As a general rule, issues, even those concerning constitutional matters, may not be raised for the first time on appeal. *State v. Kelly,* 204 Kan. 715, 716, 466 P.2d 350 (1970); *State v. Harder,* 8 Kan. App. 2d 98, 102, 650 P.2d 724 (1982).

(2) Defendant's claim that the trial court abused its discretion by not making a record of the factors it considered is also without merit. The list of factors in K.S.A. 21-4606 is to be considered by the trial court in sentencing. The court, however, is not obligated to make a record of its consideration of those factors, although it is better practice to do so. *State v. Buckner,* 223 Kan. 138, 151, 574 P.2d 918 (1977). In the present case, since the trial court imposed the minimum sentence on all counts, a record of the factors it considered is even less important.

(3) As regards defendant's complaint that the imposition of consecutive sentences was improper, we find no support for defendant's argument. The imposition of consecutive sentences for separate offenses arising out of a single transaction is permitted under K.S.A. 1986 Supp. 21-4608(1). *State v. Grantom,* 229 Kan. at 520.

(4) As his final complaint, defendant contends the trial court abused its discretion in not granting defendant probation and by delegating its decision on probation to the SRDC. We find no abuse of discretion.

Probation is a matter within the trial court's exclusive jurisdiction and is not subject to appellate review (*State v. Adams,* 218 Kan. 495, 505, 545 P.2d 1134 [1976]), unless there is a statutory presumption of probation as set forth in K.S.A. 1986 Supp. 21-4606a. *State v. Linsin,* 10 Kan. App. 2d 681, 709 P.2d 988 (1985). Here, defendant's convictions were for charges which did not fall within that statute. In addition, there is no support for defendant's argument that the trial court delegated its responsibility to the SRDC. The record reflects the trial court considered defendant's request and denied it based on its conclusion that defendant's crimes warranted imprisonment. We find nothing to support defendants' argument that the court simply adopted SRDC's recommendation.

Affirmed.