[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 321 
The Limestone County grand jury returned a five-count indictment on September 24, 1987, against appellant, Douglas Colvette. Count I charges arson in the second degree (§13A-7-42, Code of Alabama 1975); Count II charges receiving stolen property in the first degree (§ 13A-8-17); Count III charges obscuring the identity of a vehicle (§ 13A-8-22(a)(2)); and Counts IV and V charge theft of property in the first degree (§ 13A-8-3). After a jury trial, appellant was found guilty on October 21, 1988, on all counts as charged, except Count II. The trial court had granted appellant's motion for a judgment of acquittal as to Count II at the conclusion of the presentation of the state's case-in-chief. On November 21, 1988, appellant was sentenced to ten years' imprisonment on Count I, two years on Count III, four years on Count IV, and four years on Count V. The court ordered that the sentences would be served consecutively. Appellant was further ordered to pay restitution to Aetna Life and Casualty Insurance Company in the amount of $256,691.00 under Count IV and to Acceptance Insurance Company in the amount of $40,289.80 under Count V. Appellant raises four issues.
 I.
Appellant first contends that his convictions for the offenses alleged in Counts I, IV, and V are based on the uncorroborated testimony of accomplices Bobby Goodwin, Larry Robertson, and Murray Paschall.
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Ala. Code (1975), § 12-21-222.
This issue has been preserved for our review by a timely motion for a judgment of acquittal made by appellant at the conclusion of the state's case-in-chief. In reviewing the correctness of a trial court's ruling on a motion for judgment of acquittal, we may consider only the evidence before the court at the time the motion was made, and we consider that evidence in the light most favorable to the state. Mills v.State, 408 So.2d 187 (Ala.Cr.App. 1981); McCoy v. State,397 So.2d 577 (Ala.Cr.App.), cert. denied, 397 So.2d 589 (Ala. 1981).
 "The test for determining the sufficiency of the corroborative evidence of the testimony of an accomplice is through a 'subtraction process.' The test is generally stated:
 " 'First, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration.' "
McCoy v. State, 397 So.2d at 585 (citations omitted, emphasis in original).
 "[C]orroborative evidence need not refer to any statement or fact testified to by the accomplice. Neither must it be strong nor sufficient of itself to support a conviction. The probative value of the evidence need only legitimately tend to connect the accused with the crime and need not directly do so. Further, corroborative evidence need not directly confirm any particular fact nor affirm each and every material fact testified to by the accomplice. Corroboration may be proven by circumstantial evidence alone."
Mills v. State, 408 So.2d at 191.
 "The entire conduct of the accused may be surveyed for corroborative circumstances and if from them his connection with the offense may be fairly inferred the requirement of the statute is satisfied. 2 Wharton's Criminal Evidence, § 746.
 "Any statements made by the defendant, in connection with other testimony, *Page 322 
may afford corroboratory proof sufficient to sustain a conviction. 2 Wharton's Criminal Evidence, § 750."
Moore v. State, 30 Ala. App. 304, 307, 5 So.2d 644, 645 (1941), cert. denied, 242 Ala. 189, 5 So.2d 646 (1942).
Appellant owned and operated an automotive business in Athens, where he engaged in rebuilding wrecked automobiles and converting automobile engines from gasoline to diesel power. Bobby Goodwin was an employee of appellant and worked in the automobile rebuilding part of the business. Goodwin was the chief witness against appellant. He testified that appellant approached him about arranging for someone to set fire to the building where the business was located. Appellant did not own the building, but leased it from the owner. Goodwin testified that appellant asked him to try and get Charles Christian to burn the building. Christian was an acquaintance of both Goodwin and appellant. According to Goodwin, he, Christian, and appellant began discussing the burning of the building about a month to six weeks before the fire was actually set. Appellant set the date for the burning to coincide with a school reunion that he would be attending, in order to give him an alibi, and at a time that his wife would be out of town. Christian was to receive the equivalent of $5,000 to set the fire. According to Goodwin, payment was made to Christian by appellant's selling Christian a 1986 automobile worth $10,000 for $5,000. The sale occurred nine days before the fire. During the days immediately preceding the fire, several items of property were moved out of the building and others moved in. Christian arranged for Larry Robertson to set the fire and took Robertson to the building, where Goodwin showed him where to set the fire, what they wanted burned, where gasoline would be placed for his use, and which door would be left unlocked for his entry. Robertson enlisted the assistance of Murray Paschall. Robertson and Paschall torched the building and its contents as directed and on the night designated. There was substantial damage to the building and its contents. Robertson and Paschall also testified against appellant and admitted setting fire to the building. At the time of trial, Goodwin, Robertson, and Paschall had pleaded guilty to the arson, but had not been sentenced. Christian did not testify.
Clearly, Goodwin, Robertson, and Paschall are accomplices, and the state relied mainly on their testimony to obtain the convictions. The convictions for arson and theft cannot stand unless their testimony is corroborated by other evidence tending to connect appellant with the crimes. We must, therefore, review the evidence the state presented, prior to the motion for judgment of acquittal, by witnesses other than the accomplices, Goodwin, Robertson, and Paschall, that tends to connect appellant with the commission of the crimes charged in Counts I, IV, and V.
The corroborative evidence relied upon by the state is as follows:
A number of personal items that belonged to appellant were removed from the building sometime prior to the fire. Renee Rice, secretary and bookkeeper for appellant, testified that, shortly prior to the fire, the following items were removed from the premises: appellant's bow and arrow set, which had been in the office since at least 1983; appellant's fishing boat and trailer, which were usually stored in the shop, and a Doberman Pinscher guard dog, named Walter, who was kept in the shop at all times for security reasons. Keith Griffin, a mechanic, testified that the bow and arrow set, boat, and dog were moved out during the week preceding the fire. He testified that appellant moved the boat to appellant's home. He further testified that appellant's "car blower" or supercharger for appellant's truck, which had been kept in the office, and appellant's four-wheel "pull bike," which had been in the building for two or three months, were moved from the premises a day or two before the fire. Joe Moss, a mechanic, also testified that the boat, the bow and arrow set, the car blower, and the dog were removed from the building sometime during the week preceding the fire. He testified that he generally looked after and fed the dog and that the dog was never sent to the veterinarian *Page 323 
unless he needed shots or treatment and that, on this occasion, he knew of no reason why the dog should be sent to the veterinarian. He stated that the dog was allowed the run of the building at night and on weekends for security reasons. He further testified that appellant owned two trucks and that, although one was usually kept in the building, both were away from the building at the time of the fire.
Rice, Griffin, and Moss testified that a large number of conversion kits and related parts, which were used in converting engines from gasoline to diesel and which were stored at another location, were moved into the building about a month before the fire. Griffin and Moss testified that they were instructed to prepare a written inventory of the conversion kits and that, upon completion of the inventory, they gave it to appellant. Moss testified that, at the time of the fire, the conversion kits constituted 90 percent of the items in the building. Griffin testified that, shortly after the fire, while he was engaged in cleaning up the building, he moved some of the unburned conversion kits, and that gasoline ran out of them. He said that he called this to appellant's attention and that appellant told him to "quit cleaning over there and move to the other side of the shop."
Rice testified that, early in 1986, appellant's business began to fail. The engine conversion work ended because the conversion process used had become obsolete. More money was being spent than was coming in. Moss testified that business began deteriorating in May and June of 1986. He stated that there was little conversion work and that the rebuilt automobiles were not selling. Charlotte Adams, a bank employee, testified that appellant had a $150,000 line of credit with her bank on April 8, 1986, and that appellant had exhausted this line of credit by borrowing $25,000, for his business, on each of the following dates: April 8 and 29, May 22, July 8, August 11, and October 23. On the date of the fire, November 29, 1986, appellant owed the bank $150,000 as a result of these business loans. William Gardner, deputy state fire marshal, testified that appellant told him that he owed approximately $150,000 on the date of the fire.
Robert J. Nichols, claims manager for Aetna Life and Casualty Insurance Company, testified that his company had issued an insurance policy covering the contents of appellant's business, excluding vehicles, in the amount of $300,000, and that the company had paid appellant $257,691 for losses claimed in the fire. He also testified that appellant told him shortly after the fire that he (appellant) thought the fire had been caused by an electrical malfunction.
Brian Sigmon, an adjustor for Acceptance Insurance Company, testified that his company had issued a dealer's open lot insurance policy covering appellant's vehicle inventory in the amount of $125,000, and that the company had paid appellant $40,289.80 for vehicle losses in the fire. He also testified that appellant told him that he thought the fire had been caused by an electrical malfunction.
At the time appellant told Nichols that he thought the fire originated from electrical causes, he did not disclose that Griffin had discovered gasoline in some of the unburned conversion kits, even though the evidence supports a reasonable conclusion that he was aware of the presence of gasoline. Even assuming that appellant did not know of the presence of the gasoline at the time he talked to Nichols, their conversation was so close in time to Griffin's discovery that it is reasonable that appellant's failure to subsequently disclose this important information to the insurance investigators was not due to negligence, but was intentional. This equally applies to appellant's contact with Sigmon. Furthermore, the evidence supports the inference that, at the time appellant attributed the fire to electrical causes, he was aware of the blatantly obvious incendiary origin of the fire, as it had been set simultaneously in several different places and many gasoline containers had been scattered about the building. In fact, the testimony shows that the origin of the fire was never in issue with the investigators or law enforcement personnel. Nichols asked appellant if he had an inventory of the building contents, *Page 324 
and appellant told him that he "did not have one and couldn't recall when he had last taken one," even though he had been given a copy of the inventory of the conversion kits and related parts that Griffin and Moss had prepared at his request.
The state's evidence further disclosed that a white Chevrolet Camaro "IROC" automobile (a racing-type car), which had been purchased by appellant and which was in his inventory, had been stolen and that the vehicle identification number had been changed. The new identification number placed on the automobile had come from a blue Camaro automobile that belonged to appellant and which had been dismantled. Appellant had no title to the IROC automobile, and he had placed a dealer's tag on it. He used it as his personal automobile. It was not in the building on the night of the fire. On Sunday, following the fire on Saturday, appellant took the white IROC to his cousin Myra Hinkle and her husband Keith Hinkle and asked them to keep it and use it. Keith Hinkle testified that appellant told him that he would rather the automobile not be at the shop when the insurance people were there. The Hinkles kept the automobile for nine months. Rice testified that the automobile was on the business inventory and that, shortly after the fire, appellant told her to remove it from the inventory and she did. Sigmon testified that, due to the type of policy in effect, the removal of this automobile from the inventory resulted in a substantial insurance benefit to appellant at the expense of the company.
The state's evidence also disclosed that a black IROC automobile had been purchased by appellant. It also had been stolen. Even though it had not been wrecked, it was dismantled and some of the parts were placed in customer's automobiles. Rice testified that she had noticed the black IROC in the shop some weeks prior to the fire. She testified that she asked appellant where the black IROC came from and that he asked her how she knew it was an IROC and told her that she did not need to be asking questions and that it was not any of her concern.
Griffin and Moss testified that appellant was the "boss" of the whole operation and that he was the "final authority" on everything that was done.
Appellant was attending a school reunion at the time the fire was set, and his wife was out of the state.
While proof of motive alone does not satisfy the statute requiring corroboration of accomplice testimony, there was evidence here that tended to show a motive that appellant could have had for having his business burned. His business had begun to fail several months prior to the fire. He was heavily in debt and had exhausted his line of credit. He had a large inventory of obsolete parts, and his rebuilt automobiles were not selling. He was the person who would financially benefit by the fire.
The removal of personal items from the building and the relocation in the building of obsolete parts, which constituted the bulk of the inventory prior to the fire, tend to cast suspicion on appellant. With appellant's reputation for being the "boss" and for requiring that everything be cleared with him, it would be difficult to believe that he was not aware of this activity. There was testimony from state witnesses that appellant had made efforts to sell some of the obsolete parts and had told employees that he was moving the parts into the building so that an inventory could be made and so that the prospective salesmen could confirm the existence of the goods. However, there was evidence that the parts had already been inventoried prior to their relocation. Moreover, the alleged plans to sell never materialized. While there may have been plans to sell the parts, the fact of the matter was that the parts on hand were obsolete and of no immediate benefit to the business.
Other testimony offered by the state points to a consciousness of guilt in appellant, i.e., appellant's order to Griffin, within a week after the fire, to quit cleaning in the area where he discovered gasoline in the conversion kits and to move to the other side of the shop; his statement to Nichols that he thought the fire was electrical in origin when, at the time, he knew *Page 325 
Griffin had discovered gasoline in the conversion kits and his failure to disclose this to him, as well as to Sigmon; his statements to Nichols and Sigmon that the fire's cause was electrical when he obviously knew that the fire had been intentionally set with gasoline; his statement to Nichols that he did not have an inventory of the building contents when, in fact, one covering the conversion kits and related parts, which constituted 90 percent of the parts in the building, had been prepared, prior to the fire, by Griffin and Moss; his request to the Hinkles that they keep the white IROC automobile because he did not want it in the shop when the insurance people were there; his order to Rice, shortly after the fire, to remove the white IROC from the inventory; and his reprimand to Rice, when she asked where the black IROC came from, that she be asking questions and that it was not any of her concern. These statements and actions are difficult to reconcile with the innocence of appellant.
In determining whether there was sufficient corroboration of the accomplice testimony, we do not consider the testimony of Rice, concerning the sale of an automobile by appellant to Christian nine days before the fire, even though the state urges us to do so. Without the testimony of the accomplices, particularly Goodwin's testimony that explains Christian's participation in the arson and the significance of the automobile transaction in relation thereto, it would have no probative value to connect appellant with the crimes.
After reviewing the evidence set out above, we hold that it furnished sufficient corroboration of the testimony of the accomplices tending to connect appellant with the offenses of arson and theft, as charged in Counts I, IV, and V, to warrant submission of the counts to the jury. In our opinion, this evidence, while insufficient in itself to fasten guilt upon appellant, tends to connect him with the commission of the crimes independently and without the aid of the testimony of the accomplices. Whether there was such corroborative evidence was a question of law to be determined by the trial court, but its probative force and sufficiency, along with the testimony of the accomplices, to establish guilt beyond a reasonable doubt were questions for the jury. The trial court's denial of appellant's motion for judgment of acquittal based on the ground of failure to corroborate the testimony of the accomplices was proper.
 II.
Appellant contends that the trial court erred in denying his motion for a mistrial based on the prosecutor's comment in closing argument concerning a fact not in evidence. The record shows the following:
 "MR. FRY [prosecutor]: And, most incredible of all, he either answered weakly or was unable to respond at all. This man claimed to have no knowledge of the fact, that he owes, according to his accountant, his records —
 "MR. NELSON [defense counsel]: I'm going to object, Judge. There is no accountant in his records. Not one accountant testified in this case. We move to exclude it and we move for a mistrial at this time by the comment of the District Attorney."
The trial court admonished the jury as follows:
 "THE COURT: Ladies and gentlemen, it is your duty to take the evidence and the testimony that comes to you in this trial and decide the case based upon the evidence and that testimony and the instructions that I give you on the law.
 "Now, if somebody argues to you something that is not in evidence, then it is not to be considered by you. And, I instruct you that you are not to consider it. Anything that is not in evidence or any conclusion as to what is evidence, if there is some dispute about what the evidence is, the nature of the evidence. It is your duty alone to decide what the evidence is and I will charge you on that part."
A mistrial is an extreme measure which should be granted only when the prejudicial qualities of the comment cannot be eradicated by instructions or other actions by the trial court.Hurst v. State, *Page 326 469 So.2d 720 (Ala.Cr.App. 1985). The trial court has wide discretion in determining what curative measures are required.Mitchell v. State, 450 So.2d 181 (Ala.Cr.App. 1984). We do not believe, in the instant case, that the prosecutor's remark complained of created ineradicable prejudice and, in our opinion, any possible prejudice was cured by the trial court's instructions. We find no abuse of the trial court's discretion here, and the denial of the motion for mistrial was proper. Further, we do not believe that the comment concerning an accountant could have had any bearing upon the outcome of this case and, if the comment was error, it was error without injury. A.R.App.P. 45.
 III.
Appellant contends that error occurred when the trial court denied his motion to suppress certain evidence seized in a search of appellant's premises, pursuant to a search warrant. He argues that the affidavit attached to the search warrant was inadequate to support a finding of probable cause for the issuance of the search warrant. We deem it unnecessary to set out the affidavit in this opinion. Following the suppression hearing, the trial court entered the following order:
 "The particular warrant in question here is based upon information obtained from informants. Though technically deficient, it is not obvious on its face nor does the Court find that the officer acted in bad faith, but to the contrary acted in good faith and on honest belief that the requirements of the law had been satisfied by the actions of the district judge in granting the warrant. The warrant, itself, shows that the affiant had made an effort to comply with the requirements of a warrant and that based upon the decision of the United States Supreme Court in U.S. v. Leon, that the motion to suppress is due to be denied."
We have reviewed the record and particularly the affidavit in reference to this issue. We do not necessarily agree with the trial court that the warrant was "technically deficient"; however, we do agree — and hold — that the ruling of the trial court, which was based upon the good-faith exception to the exclusionary announced in United States v. Leon,468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was correct. We find no reason to question the findings of the trial judge. We believe that the record supports a finding that the officer acted in reasonable reliance on a search warrant issued by a detached and neutral magistrate. We find no indication of knowing or reckless falsity of any information contained in the affidavit, and we believe that the affidavit was sufficient to provide the issuing magistrate with a substantial basis for determining the existence of probable cause.
 IV.
Appellant contends that it was error to convict him of arson under Count I and theft of property under Counts IV and V, since the offenses arose out of the same transaction. He argues that the elements of arson are included in, and are essential to, proof of the theft by deception charges and that under the test set out in Blockburger v. United States, 284 U.S. 299,52 S.Ct. 180, 76 L.Ed. 306 (1932), he cannot be convicted for both arson and theft growing out of the same act. We disagree. His reliance on Blockburger is unfounded.
"Arson and theft are two separate offenses involving separate elements and separate acts. Bolden v. State, 568 So.2d 841
(Ala.Cr.App. 1989), cert. granted as to appellant Hill only, and cases cited therein. Moreover, neither offense is a lesser included offense of the other. Bolden v. State; Shamlin v.State, 23 Ark. App. 39, 743 S.W.2d 1 (1988), cert. denied,488 U.S. 863, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988) (arson is not a lesser included offense of conspiracy to commit theft by deception and not an element included in that offense, and thus defendant could be convicted of both crimes, because they are not of the same generic class and could each be proven without proof of the other); State v. Brewer, 11 Kan. App. 2d 655,732 P.2d 780 (1987) (defendant's convictions for arson, arson with intent to defraud his insurer, and *Page 327 
theft by deception, arising out of the burning of his dwelling, were not improperly multiplicious, as crimes charged were not lesser included offenses and each required proof of an additional fact not required by the other).
In the instant case, the offense of arson and the offense of theft by deception are separate and distinct offenses involving separate elements and separate acts; the arson was not a lesser included offense of the theft; neither was necessarily proved by proof of the other; and each required proof of an additional fact not required by the other. The fact that one of the overt acts alleged in the theft indictments — that appellant had the building, which housed his business, burned — is equivalent to one of the elements of arson does not render arson a lesser included offense or a lesser included element of the offense of theft by deception. Shamlin v. State.
For the above reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.