(932 P.2d 1023)
No. 75,051

## In the Matter of the Investigation into the Homicide of T.H.

472

Opinion filed February 14, 1997.

*Timothy D. Hamilton*, of Kansas City, for appellant.

*Terra D. Morehead*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., ELLIOTT, J., and THEODORE B. ICE, District Judge, assigned.

ICE, J.: This appeal by a witness at an inquisition results from findings by the district court following the death of 16-month-old T.H. in Wyandotte County.

The following questions are presented: (1) Did the district court err in refusing to allow the witness to assert a blanket Fifth Amendment right to silence at the inquisition; (2) did the district court use the correct standard to determine whether the witness could properly invoke the Fifth Amendment right in response to the questions asked by the assistant district attorney; (3) did the district court err in determining that the witness did not have a reasonable cause to apprehend danger from a direct answer to the two disputed questions; (4) did the district court err in refusing to quash the subpoena of the witness; (5) is an assistant district attorney authorized to conduct an inquisition; (6) did the district court err in closing the inquisition to the public, secluding the court file and records, and allowing police detectives to remain in attendance at the inquisition; (7) did the district court err in holding the contempt proceedings without a public hearing; and (8) did the district court err in allowing the assistant district attorney to question the witness on matters outside the homicide investigation?

## Blanket Fifth Amendment Right to Silence

The witness argues the district court should have allowed a blanket Fifth Amendment right to be asserted in order for the witness to remain totally silent at the inquisition. Further, the witness contends this court should find K.S.A. 22-3101 *et seq.* violates the Fifth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and § 10 of the Kansas Constitution Bill of Rights. In the alternative, the witness requests that this court instruct the district court to allow an as-

sertion of a blanket right of silence unless the witness is given an unconditional grant of immunity from prosecution for any matter about which the witness testifies.

Interpretation of the inquisition statute is a question of law upon which this court has unlimited review. See *State v. Williams*, 20 Kan. App. 2d 185, 190, 884 P.2d 755 (1994).

K.S.A. 22-3102 provides:

"No person called as a witness at an inquisition shall be required to make any statement which will incriminate him. The attorney general, assistant attorney general or county attorney may, on behalf of the state, grant any person called as a witness at an inquisition immunity from prosecution or punishment on account of any transaction or matter about which such person shall be compelled to testify and such testimony shall not be used against such person in any prosecution for a crime under the laws of Kansas or any municipal ordinance. After being granted immunity from prosecution or punishment, as herein provided, no person shall be excused from testifying on the ground that his testimony may incriminate him."

K.S.A. 22-3104 provides:

"(1) Any person called to testify at an inquisition must be informed that he has a right to be advised by counsel and that he may not be required to make any statement which will incriminate him. Upon a request by such person for counsel, no further examination of the witness shall take place until counsel is present. . . .

"(2) Counsel for any witness shall be present while the witness is testifying and may interpose objections on behalf of the witness. He shall not be permitted to examine or cross-examine his client or any other witness at the inquisition."

Inquisitions are used for gathering information to determine whether probable cause exists to support a criminal prosecution. An inquisition may also be used, however, to obtain sworn testimony following an indictment. This court, in fact, has previously held that an inquisition can be used to obtain testimony whenever an individual is believed to have information concerning criminal activity. *State v. Brewer*, 11 Kan. App. 2d 655, 656, 732 P.2d 780, *rev. denied* 241 Kan. 839 (1987).

"An inquisition is in effect a one-person grand jury which provides the attorney general, his assistant, or any county or district attorney with authority to inquire into alleged violations of the law." *State v. Cathey*, 241 Kan. 715, 723, 741 P.2d 738 (1987).

K.S.A. 60-407(b) provides: "[N]o person has a privilege to refuse to be a witness." One of the exceptions to this general rule is the constitutional guarantee of the right against self-incrimination contained in the Fifth Amendment to the United States Constitution, which is echoed in the Kansas Constitution and set forth in K.S.A. 60-425.

The Fifth Amendment privilege " 'can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory [citations omitted], and it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.' " *State v. Lekas*, 201 Kan. 579, 589, 442 P.2d 11 (1968) (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 94, 12 L. Ed. 2d 678, 84 S. Ct. 1594 [1964] [White, J., concurring.]).

The object of the Fifth Amendment is " 'to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' " *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 94 S. Ct. 316 (1973) (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562, 35 L. Ed. 1110, 12 S. Ct. 195 [1892]). The privilege is founded on " 'our unwillingness to subject those suspected of a crime to the cruel trilemma of self-accusation, perjury or contempt.' " *Doe v. United States*, 487 U.S. 201, 212, 101 L. Ed. 2d 184, 108 S. Ct. 2341 (1988) (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. at 55).

An accused in a criminal case cannot be required to testify. K.S.A. 60-423; *State v. Nott*, 234 Kan. 34, 36, 669 P.2d 660 (1983). Similarly, a person who is the subject of a custodial interrogation by law enforcement officials has the right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966); *State v. Lewis*, 258 Kan. 24, 31, 899 P.2d 1027 (1995). These protections are absolute, and a person may claim a blanket privilege. "In a criminal trial, a defendant has the absolute right not to be *called* as a witness." *Nott*, 234 Kan. at 36. The witness in this appeal argues a similar blanket privilege should apply to a witness in an inquisition. This issue has not been directly addressed

by any published Kansas appellate opinion, and this opinion is intended to clarify that issue.

The first sentence of K.S.A. 22-3102 provides: "No person called as a witness at an inquisition shall be required to make any statement which will incriminate him." Thus, the inquisition statute contemplates that a person who might make incriminating statements may be called as a witness; it does, however, protect the witness from being required to make incriminating statements. K.S.A. 22-3102 does not expressly protect a witness from being required to answer nonincriminating questions.

The Kansas Supreme Court, in *State v. Cathey*, 241 Kan. at 722, held that a *Miranda* warning is not required before a witness is questioned at an inquisition because the warning provided by K.S.A. 22-3104 is adequate. The court held that the district court did not err in refusing to suppress the defendant's inquisition statement given after the statutory warnings, stating:

"Although the witness' presence at the inquisition is compelled, the witness' self-incriminating statements are not. Nor are there any physical restraints on the witness' freedom. An individual who fails to appear after being summoned or refuses to give a non-incriminating statement is subject to civil contempt, not criminal punishment. Under such circumstances, a warning under *Miranda* is not constitutionally required. K.S.A. 22-3104's statutory safeguards are fully adequate to protect an inquisition witness' constitutional rights, even where that witness is subsequently accused of committing the crime under investigation." 241 Kan. at 721-22.

Importantly, in *Cathey*, the court notes the presence of a witness at an inquisition is required, and the failure to give a nonincriminating statement is subject to civil contempt.

Based on the statutory language and the interpretive case law which is available, this court finds that a person called as a witness in an inquisition under K.S.A. 22-3101 *et seq.* is not provided blanket immunity from answering questions, and the district court correctly required the witness to assert a Fifth Amendment right on a question-by-question basis.

The witness' argument that *Miranda* is effectively overruled if the witness does not have a constitutional right to remain silent in an inquisition ignores the distinction made by the Kansas Supreme

Court between custodial interrogations and investigatory proceedings. In *Cathey*, 241 Kan. at 721, the court noted that the Kansas inquisition procedure is an investigatory tool and discussed the distinction between custodial interrogation and investigatory interrogation:

"Custodial interrogation is the questioning of persons by law enforcement officers, initiated and conducted while such persons are held in legal custody or are otherwise deprived of their freedom of action in any significant way. Investigatory interrogation is the questioning of persons by law enforcement officers in a routine manner in an investigation which has not reached an accusatory stage and where such persons are not in legal custody or deprived of their freedom of action in any significant way. [Citation omitted.]"

The court concluded that an inquisition "equates with routine questioning of witnesses by law enforcement officers during an investigation of a possible crime." 241 Kan. at 721. The inquisition procedures simply govern a different sphere of interrogation. Thus, K.S.A. 22-3101 *et seq.* does not effectively overrule the United States Supreme Court decision in *Miranda.*

### Use of Correct Standard

The witness argues that the district court did not apply the correct standard in evaluating whether the Fifth Amendment right could be invoked in response to the questions asked by the assistant district attorney.

This issue raises a question of law upon which this court has unlimited review. See *Williams*, 20 Kan. App. 2d at 190.

The protection of the Fifth Amendment applies where "the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486, 95 L. Ed. 1118, 71 S. Ct. 814 (1951). In *Hoffman*, the witness was convicted of criminal contempt for failure to answer questions before a federal grand jury. The United States Supreme Court discussed the difficult line that must be drawn by the trial court:

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. [Citation omitted.] But this protection must be confined to instances where the witness has reasonable cause to apprehend danger

from a direct answer. [Citation omitted.] The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, [citation omitted], and to require him to answer if 'it clearly appears to the court that he is mistaken.' [Citation omitted.] However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486-87.

The above standard was quoted by the Kansas Supreme Court in *State v. Durrant*, 244 Kan. 522, 529, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989). The court also noted:

"Even if direct use of the compelled testimony itself would not be incriminating, the Fifth Amendment may be invoked if the compelled testimony would lead to the discovery of incriminating evidence. *Doe*, 487 U.S. at 208 n.6, and case cited therein. Thus, the Fifth Amendment protection applies not only to the potential direct use of the compelled statements, but also applies if such statements might reasonably lead to other incriminating evidence." 244 Kan. at 528.

The guarantees of the Fifth Amendment are enforced against the States through the Fourteenth Amendment, which holds the States to the same standards that protect those personal rights against federal encroachment. *Malloy v. Hogan*, 378 U.S. 1, 3, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964); *State v. Talsma*, 2 Kan. App. 2d 551, 552, 584 P.2d 145 (1978).

In *State v. Green*, 254 Kan. 669, 679, 867 P.2d 366 (1994), the court noted: "The Fifth Amendment operates only where a witness is asked to incriminate himself or herself; that is, to give testimony which could possibly expose the witness to a criminal charge."

In this case, the witness argues the case should be remanded for the district court to apply the standard of whether the witness has reasonable apprehension that the answer could be used in a criminal prosecution or could lead to other evidence that might be so used. In essence, the witness argues that the district court should apply the standard announced in *Hoffman*, 341 U.S. at 486-87. The

district court in this case agreed and stated the standard was "that it must be [an] instance where the witness has reasonable cause to apprehend danger from a direct answer." The witness' argument that the district court applied the wrong standard lacks merit.

### Apprehension of Danger

The witness next contends the district court erred in determining that she did not have a reasonable cause to apprehend danger from a direct answer to the two disputed questions. The witness argues that her apprehension of danger from the two disputed questions is reasonable and that the Fifth Amendment right should apply.

"The standard of review for an order of contempt is abuse of discretion." *Williams*, 20 Kan. App. 2d at 187. The issue of whether a question requires an incriminating answer, however, is a question of law subject to unlimited review. 20 Kan. App. 2d at 189-90.

"Fifth Amendment protection applies not only to the potential direct use of the compelled statements, but also applies if such statements might reasonably lead to other incriminating evidence." *Durrant*, 244 Kan. at 528. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486-87.

The *Hoffman* Court stated that the clause of the Fifth Amendment guaranteeing the right to be free from self-incrimination should be liberally construed. 341 U.S. at 486; see *State v. Finch*, 71 Kan. 793, 796, 81 Pac. 494 (1905). As noted above, the inquisition procedures may be used by law enforcement officials to compel testimony by the target of an investigation where the target might otherwise be able to claim an absolute right to silence. In light of the possibility that the inquisition may be used to circumvent the broader application of the Fifth Amendment in other contexts, district courts determining whether a question posed at an inquisition is properly within the scope of the Fifth Amendment

right should take a broad view of what may result in an injurious disclosure.

The setting of the inquisition certainly gave the witness in this case reason to be cautious. The application for the inquisition states that an autopsy ruled that the death was a homicide. An autopsy report, however, was not provided to the district court nor defense counsel. The application states that the victim's grandmother "told doctors that the injuries were received at the home." The application also states that the grandparents and the mother, the witness, have refused to cooperate with the police investigation. It is reasonable for the witness to assume that she is a potential target of the investigation.

Some imagination is required to construct a situation where the first question, "Who is the natural father of [the victim]?" falls within the witness' Fifth Amendment right against self-incrimination. The district attorney granted immunity from any sex offenses that might have arisen from the conception of the victim. During the inquisition, however, counsel for the witness argued that this question might provide evidence of motive or psychological background that could lead to incriminating evidence. Because the right to be free from compelled self-incrimination should be construed broadly in this context, this court concludes that the witness properly asserted a Fifth Amendment right to this question.

The second question was, "Could you tell me [in] the two weeks prior to [the victim's] death, who would have had an opportunity to have contact with [the victim]?" This question could lead to incriminating evidence or links in the chain of incriminating evidence. If no one other than the witness had contact with the victim and the autopsy indicates a homicide, this is certainly incriminating evidence. This court concludes that the witness properly asserted a Fifth Amendment right to this question.

In looking behind the witness' claim of a Fifth Amendment right of refusal to answer specific questions, the court was placing the witness in the position of having to explain why the answer might be incriminating, which, in and of itself, defeats the Fifth Amendment protection.

## Refusal to Quash Subpoena

The witness filed a motion to quash the subpoena for her attendance at the inquisition. The district court denied the motion to quash, and the witness argues this was error.

In *State ex rel. Cranford v. Bishop*, 230 Kan. 799, 801, 640 P.2d 1271 (1982), the court held that a district court has the inherent power and discretion to refuse to issue subpoenas under K.S.A. 22-3101 to avoid abuse of judicial process. In filing the motion to quash, the witness was requesting that the district exercise this discretionary power on her behalf. This court will not reverse the district court's decision absent a showing of abuse of discretion. See *In re Tax Appeal of Collingwood Grain, Inc.*, 257 Kan. 237, 256, 891 P.2d 422 (1995). Discretion is abused if no reasonable person would take the view adopted by the district court. *State ex rel. Wolgast v. Schurle*, 11 Kan. App. 2d 390, 395, 722 P.2d 585 (1986).

K.S.A. 22-3101(1) provides:

"If the attorney general, an assistant attorney general, the county attorney or the district attorney of any county is informed or has knowledge of any alleged violation of the laws of Kansas, such person may apply to a district judge to conduct an inquisition. An application for an inquisition shall be in writing, verified under oath, setting forth the alleged violation of law. Upon the filing of the application, the judge with whom it is filed, on the written praecipe of such attorney, shall issue a subpoena for the witnesses named in such praecipe commanding them to appear and testify concerning the matters under investigation. Such subpoenas shall be served and returned as subpoenas for witnesses in criminal cases in the district court."

In *State v. Cathey*, 241 Kan. at 723, the court stated: "If, after reviewing the application for an inquisition, the district judge determines that the application is legally defective, to avoid abuse of judicial process, the district judge has the authority to refuse to issue subpoenas." There is no other statement in Kansas statutes or case law elaborating on the standard that a district court should use in evaluating subpoenas issued in an inquisition.

Generally speaking, the district court has the power to quash a subpoena if it is "unreasonable or oppressive." K.S.A. 60-245(b); *Collingwood*, 257 Kan. at 256. Subpoenas issued in administrative

investigations are subject to less strict relevancy requirements than subpoenas in aid of civil or criminal litigation. *Collingwood*, 257 Kan. at 254-55. "[I]n light of agencies' investigatory duties, the test of relevancy requires satisfaction of only three elements: (1) that the inquiry be one which the agency demanding production is authorized to make; (2) that the demand not be too indefinite; and (3) that the information sought be reasonably relevant." *Schurle*, 11 Kan. App. 2d at 394.

Because an inquisition involves investigatory duties, this court concludes that the agency investigation standard should be used by district courts in evaluating subpoenas issued in an inquisition.

The witness argues that the district court should evaluate an application for an inquisition under the standard that is used to evaluate the application for a search warrant. See *State v. Probst*, 247 Kan. 196, 200-01, 795 P.2d 393 (1990). This argument ignores the law relevant to subpoenas and is not persuasive. This argument also ignores the distinction between the State's broad power to compel its citizen's testimony and the citizen's right to be free from unreasonable searches and seizures.

The witness argues that the subpoena should be quashed because the application for the inquisition is based upon an autopsy, and the autopsy has not been provided to the district court. It would have been reasonable for the district court to require the assistant district attorney to produce the autopsy report upon which the application was based. The district attorney, however, filed an affidavit swearing that the contents of the application were "true and correct to the best of his knowledge and belief." If the district court believes that the district attorney's application and affidavit are sufficient to issue the subpoenas in the inquisition, this court is not inclined to find that belief unreasonable.

### Authorization of Assistant District Attorney to Conduct Inquisition

The witness argues that the assistant district attorney is not authorized to conduct this inquisition. The witness requests that this court remand the case with instructions requiring that the district attorney or county attorney conduct the inquisition.

K.S.A. 22-3101(1) authorizes "the attorney general, an assistant attorney general, the county attorney or the district attorney of any county" to apply to the district court to conduct an inquisition if the official "is informed or has knowledge of any alleged violation of the laws of Kansas." K.S.A. 22-3101(2) additionally authorizes a "designated assistant county or district attorney" to issue subpoenas for inquisitions involving "gambling, intoxicating liquors, criminal syndicalism, racketeering, bribery, tampering with a sports contest, narcotic or dangerous drugs or any violation of any law where the accused is a fugitive from justice."

The witness notes the distinction between the two subsections and argues that an assistant district attorney may only conduct certain facets of inquisitions involving the specified offenses.

In *State v. Cathey*, 241 Kan. at 720, the court noted: "The Kansas inquisition procedure is an investigatory tool available only to the attorney general, his assistant, or the county or district attorney."

In this case, the district attorney filed the application for the inquisition, but the questioning was conducted by an assistant district attorney.

The witness relies on the concurring opinion in *State ex rel. Cranford v. Bishop*, 230 Kan. at 801-03, where Justice Miller, joined by Justices Prager and McFarland, noted that a deputy county attorney is not authorized to commence an inquisition. Conversely, "the legislature intended to restrict the power to commence these proceedings to the principal prosecuting attorneys of this state and its counties." 230 Kan. at 803. Justice Miller applied this rule to the facts of *Bishop*:

"There is no indication in any of these proceedings that the county attorney of Cowley County at any time authorized or was made aware of the commencement of the inquisition proceedings or of this mandamus action. His name is singularly absent, not only from the original district court proceedings, but from the mandamus action commenced in this court. For the reasons stated, I do not believe that the statute authorizes a deputy county attorney to commence inquisition proceedings; such power is specifically reserved to the county attorney, the attorney general and assistant attorneys general. Since the inquisition was not commenced by an authorized official, relief in this mandamus proceeding must be denied." 230 Kan. at 803.

In this case, the district attorney signed the affidavit applying for the inquisition. Thus, the district attorney commenced the proceedings. The district court cited the *Bishop* case and noted that the district attorney commenced this inquisition. The district court ruled that the requirements of K.S.A. 22-3101(1) were satisfied and that the assistant district attorney could question the witness. A rule requiring the elected district attorney or county attorney exclusively to conduct all of the questioning during an inquisition would place some offices at a huge disadvantage in utilizing the inquisition process. It is the decision of this court that if the district attorney or county attorney commences the inquisition, the intent of the legislature is served, and an assistant district or county attorney may question witnesses.

## Closing Inquisition to Public

The witness argues that the district court erred in closing the inquisition hearings to the public, secluding the court file and records, and allowing police detectives to remain in attendance at the inquisition.

The district court closed the inquisition to the public because the investigation dealt with confidential and family matters that the district court concluded were not appropriately open to the public at the time of the investigation.

The State notes that grand jury proceedings are secret, and disclosures may only be made under specified circumstances. K.S.A. 22-3012. In *Cathey*, 241 Kan. at 723, the court likened the inquisition to a "one-person grand jury." The witness cites no on point authority for the proposition that inquisition hearings must be public. The district court's reasons for closing the inquisition hearing to the public were sound.

Counsel for the witness complains that the civil clerks and the district court judge denied him access to the record on appeal. The record indicates that while counsel for the witness was initially denied access to the records, the district court allowed counsel for the witness access to the complete record on appeal with the exception of the testimony of two other witnesses. The portion that was excluded from counsel's review was included in the record sent

to this court. There is nothing in that portion of the record that is relevant to the witness' appeal. The district court did not err in its treatment of the record.

The district court allowed two police detectives to attend the inquisition questioning of the witness. The district court reasoned that the inquisition statute was designed to assist the State in investigations. The district court instructed the detectives that sanctions would be imposed if they communicated the information to the public or newspapers.

Inquisitions are used to investigate criminal activity. *Brewer*, 11 Kan. App. 2d at 656. Prohibiting the attendance of police at inquisitions would ignore that purpose. The district court did not err in allowing the detectives to attend the inquisition.

## Holding Contempt Proceedings Without a Public Hearing

By earlier rulings in this opinion, this court has found that the witness should not have been found in contempt for refusing to answer the two propounded questions. However, because of the lack of precedence in this particular area of the law, this court deems it appropriate to address the issue of the constitutionality of contempt proceedings arising from an inquisition that are conducted in private without a public hearing.

The United States Supreme Court has specifically held that contempt proceedings arising from an inquisition in Kansas and held in secret violate the Fourteenth Amendment Due Process Clause. *Courtney, et al. v. Schroeder*, 348 U.S. 933, 99 L. Ed. 732, 75 S. Ct. 355 (1955), reversing *In re Ferris*, 175 Kan. 704, 267 P.2d 190 (1954).

In *In re Oliver*, 333. U.S. 257, 272-73, 92 L. Ed. 682, 68 S. Ct. 499 (1948), the Court held that a defendant charged with contempt arising from Michigan's "one-man grand jury" had to be afforded a public hearing on the contempt charge. The Court did not pass on the validity of the secret one-man grand jury proceedings. Instead, the Court distinguished the witness' rights in the grand jury proceedings from his rights as a defendant in the contempt proceedings. Although the Michigan one-man grand jury differed from the Kansas inquisition statute, the Court in *Schroeder* held

that the same rule applied to the Kansas inquisition. 348 U.S. 933; see Comment, *The Inquisition in Kansas—Its Use, Disuse, and Abuse,* 6 Kan. L. Rev. 452, 459-61 (1958). The important point to be drawn from these cases is that contempt proceedings arising from an inquisition and held in secret violate the Fourteenth Amendment Due Process Clause.

District courts conducting inquisitions should be aware that contempt proceedings held in conjunction with inquisitions should be conducted publicly. If the secrecy of the investigation is paramount, the contempt proceedings may be delayed.

## Matters Outside the Homicide Investigation

The witness argues the assistant district attorney should not have been allowed to question her on matters outside the homicide investigation, contending the district court should have sustained her counsel's relevancy objections.

As noted by the witness, K.S.A. 22-3101(3) provides: "Each witness shall be sworn to make true answers to all questions propounded to such witness touching the matters under investigation." Additionally, the witness notes that K.S.A 22-3104(2) provides that counsel for any witness shall be present and may object on behalf of the witness.

During the proceedings in the inquisition, the district court stated:

"I concur with your objection, counsel, although, as I have indicated, I do believe it is a fishing expedition sanctioned by the statute and I am giving counsel some leeway. I will concur with you that I'm not sure . . . where this particular line of questions [is] going and I would suggest that we might want to move into another area."

"The admission of evidence is governed by its relevancy to the issue in question, and the exclusion of evidence is within the discretion of the district court." *State v. Knighten,* 260 Kan. 47, 53, 917 P.2d 1324 (1996). The relevancy requirements during an inquisition are relaxed because of the investigatory nature of an inquisition proceeding. This relaxation does not defeat the purpose of having counsel present for the witness during an inquisition. Numerous objections were sustained, and the district court even

urged the State to move on based upon relevancy. The district court did not, however, abuse its discretion in overruling the relevancy objections made by the witness' counsel.

The order of contempt is reversed, based on the witness' Fifth Amendment right not to incriminate herself on specific questions. All other issues are affirmed.

Affirmed in part and reversed in part.