(202 P.3d 712)
No. 97,181

SUE A. WALKER, INDIVIDUALLY AND AS NATURAL MOTHER AND HEIR-AT-LAW OF SHEENA L. WALKER, DECEASED; AND THE ESTATE OF SHEENA L. WALKER, DECEASED, BY AND THROUGH SUE A. WALKER AS SPECIAL ADMINISTRATOR OF THE ESTATE, *Appellants,* v. RANDALL S. REGEHR, M.D.; REGAN TABOR, M.D.; AND VIA CHRISTI REGIONAL MEDICAL CENTER, INC., ST. FRANCIS CAMPUS, *Appellees.*

Opinion filed March 6, 2009.

*Thomas M. Warner, Jr.,* and *Gerard C. Scott,* of Warner Law Offices, P.A., of Wichita, for appellants.

*Amy S. Lemley* and *Stephen M. Kerwick,* of Foulston Siefkin LLP, of Wichita, for appellee Randall S. Regehr, M.D.

*Mark R. Maloney* and *Michelle M. Watson,* of Gilliland & Hayes, P.A., of Wichita, for appellee Regan Tabor, M.D.

*Don D. Gribble, II,* and *Daniel K. Back,* of Hite, Fanning & Honeyman L.L.P., of Wichita, for appellee Via Christi Regional Medical Center, Inc.

Before HILL, P.J., PIERRON and CAPLINGER, JJ.

HILL, J.: When the estate and heirs of a 17-year-old girl sued for wrongful death in this case, the law allowed any party to ask the district court to call a medical malpractice screening panel to decide whether there was a departure from the standard of practice

of the health care specialty involved in the case and, if so, whether that departure caused the damages claimed. The court convened two such panels here—one to consider the administration of anesthesia to the girl and the second panel to look into the performance of the surgeon. Both panels filed reports which were admitted into evidence at trial. For many reasons, the panels took far longer to do their work than the 90-day period set out in the statute, causing a delay of the trial for over a year, with the report about the surgeon being received during the third week of the jury trial. The reports advised that the screening panels found no deviations from the standards of care by the physicians. At the end of the trial, the jury returned a no-fault verdict. The appellants ask us in this appeal to set aside the judgment of the district court and order a new trial, claiming a deprivation of due process and equal protection of the law.

The record on appeal reveals that while the screening panels' work was pending, discovery was not stayed in the case, the parties received the anesthesia screening panel report about 5 months prior to trial, and the plaintiffs had ample time to prepare for the report's admission and prepare for trial. We conclude there was no due process violation with the anesthesia panel in this case.

Further, just before trial, the surgeon, who had originally requested the screening panel, asked the court to disband the surgery panel because the jury trial was imminent and its report was not yet ready. But the plaintiffs objected to disbanding the panel, seeking its report instead. We hold this is tantamount to inviting error—a party cannot seek a ruling of the district court and then complain about that ruling on appeal. Finally, since the plaintiffs failed to raise the equal protection claims to the district court they cannot raise the issue for the first time on appeal. We therefore affirm.

*We must first decide if we have jurisdiction to hear this appeal.*

The grounds for an appeal are staked out in the notice of appeal. The controlling statute, K.S.A. 60-2103(b) provides: "The notice of appeal shall specify the parties taking the appeal; *shall designate the judgment or part thereof appealed from,* and shall name the appellate court to which the appeal is taken." (Emphasis added.)

This judgment designation is important. Failure to designate can lead to a dismissal of part or all of an appeal.

Here, the appellants' notice of appeal states: "Notice is hereby given that plaintiffs appeal from the Journal Entry of Judgment entered on July 19, 2006 to the Court of Appeals of the State of Kansas." We note initially that this is a specific notice of appeal, including none of the "catch-all" language this court has seen used in other notices. The July 19, 2006, journal entry indicates the trial occurred from May 30, 2006, to June 26, 2006, and sets forth the jury's verdict of no fault as well as the rulings that had been made during the trial. The rulings specified in the July 19, 2006, journal entry include (1) the defendants' motions for directed verdict; (2) the plaintiffs' motion for directed verdict concerning comparative fault of Sheena Walker; (3) jury instructions; (4) the plaintiffs' motion involving evidence pertaining to a prescription invoice; and (5) the plaintiffs' renewal of various motions for directed verdict.

Both doctors argue the notice of appeal fails to give this court jurisdiction to hear the matters the appellants complain about, namely the screening panels. Dr. Regan Tabor points out the July 19 journal entry refers only to the jury's verdict and the court's rulings on motions for directed verdict. According to Dr. Tabor, rulings about the anesthesia panel's opinion were made in the district court's decisions on February 4, 2004, and May 26, 2006. Dr. Randall Regehr joins this argument, claiming that the objections at trial over the admission of the anesthesia and/or surgery panels' opinions are not sufficient to provide this court with jurisdiction to entertain the constitutional issues raised in plaintiffs' appeal. Dr. Regehr claims that the July 19, 2006, journal entry did not memorialize any ruling on the constitutionality of the screening panel statutes. Therefore, Dr. Regehr contends that the plaintiffs' objections and the district court's rulings at trial should be considered as evidentiary, not constitutional claims.

In order to resolve this question, we look for the guidance of precedent. We are taught by our Supreme Court in *Key v. Hein, Ebert and Weir, Chtd.*, 265 Kan. 124, 129, 960 P.2d 746 (1998), that when we must consider discrepancies between a notice of appeal and the issues briefed, we are to reject requests to make

the requirements of the notice of appeal technical or burdensome. Instead, our Supreme Court's approach has been to use a broad or "liberal construction to secure the just, speedy, and inexpensive determination of every action or proceeding" as required by the Kansas Code of Civil Procedure. *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 720, 869 P.2d 598 (1994); see K.S.A. 60-102.

In claiming that this court does not have jurisdiction to consider the plaintiffs' appeal regarding the anesthesia panel opinion, Dr. Tabor asks us to follow the ruling in *Raney-Neises v. HCA Health Service of Kansas, Inc.,* No. 93,740, an unpublished opinion filed May 26, 2006. In *Raney-Neises,* a panel of this court held it lacked jurisdiction to consider the merits of the appellants' appeal because the notice of appeal did not encompass the trial court's pretrial rulings that were challenged on appeal. The panel relied on the facts that (1) the notice of appeal was not filed by a pro se litigant; (2) the particular reference to the judgment in the notice of appeal did not refer to the other rulings from which the appellants tried to appeal; and (3) there was no "catch-all" language in the notice of appeal. Slip op. at 21. Initially, we note that despite its jurisdictional ruling, the court in *Raney-Neises* continued to address the appellants' briefed issues in order to demonstrate that no reversible error had occurred.

Nonetheless, we do not believe the *Raney-Neises* ruling is pertinent to our considerations here. In that case, the appellants' appeal only related to the trial court's rulings made before trial, while the plaintiffs here, citing due process grounds, objected to the admission of both screening panels' opinions at trial on June 1, 2006, prior to the parties' opening statements.

The July 19, 2006, journal entry in this case set forth the trial dates, and within those trial dates, the district court overruled the plaintiffs' due process objections to the admission of both panels' opinions. Dr. Tabor does not now claim he was surprised or placed at a disadvantage by the issues the appellants have briefed. Likewise, Dr. Regehr cannot successfully claim complete surprise concerning the plaintiffs' due process issue, since the plaintiffs' counsel raised this issue at trial by stating:

"I want to make an objection on the record before we get started to any reference to alleged screening panel[s] in this case. I think that the admission of the reference to the screening panels will violate *our due process rights* under the facts and circumstances of this cases which have been discussed over an extended period of time, namely about a year, as to the lateness of the filing by the anesthesia panel request and certainly by the fact we're starting trial today and we don't have any panel decision yet. So I think any reference whatsoever would be prejudicial and I want the record to note the objection in the strongest possible terms to those screening panels." (Emphasis added.)

Therefore, in broadly construing the plaintiffs' notice of appeal in accordance with the opinion in *Hess*, we find that the notice of appeal was adequate to provide this court with jurisdiction to review the due process issue.

But, we have no jurisdiction over the appellants' equal protection issue. First, the plaintiffs failed to raise this argument before the district court. Thus, even under a liberal construction of the notice of appeal, it cannot encompass any rulings made by the district court over this matter as the court made no such rulings. Simply put, the plaintiffs have not preserved this issue for appeal. Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). We will not inquire into the equal protection argument but proceed solely with the due process claim.

*The parties encountered great difficulties in starting the screening panels.*

In September 2003, Sue A. Walker, individually, as mother and heir of Sheena L. Walker, and as special administrator of Estate of Sheena L. Walker, Deceased, brought a wrongful death action against defendants Randall S. Regehr, M.D., Regan Tabor, M.D., and Via Christi Regional Medical Center, Inc., for the death of Sheena L. Walker, who died after thyroid surgery.

Dr. Regehr asked the district court to convene a medical malpractice screening panel in October 2003. We must point out here that during all of the pretrial hearings concerning the malpractice screening panels, District Judge Carl W. Friedel ruled on the matter. But the jury trial and all other pretrial issues were decided by

District Judge Warren M. Wilbert. Over the objection of the plaintiffs, the court, on February 4, 2004, granted Dr. Regehr's motion but ordered discovery in this case to continue "notwithstanding screening panel proceedings." On April 19, 2004, over the plaintiffs' renewed objections, the district court ordered two separate panels be called, one for the surgeon and one for the anesthesiologist. The court wanted the panels to be selected by May 3, 2004. After this ruling, Drs. Regehr and Tabor and the plaintiffs each designated their respective screening panel members. But, Dr. Regehr and the plaintiffs were unable to agree upon their mutual member of the surgery screening panel. Because of that disagreement, Dr. Regehr filed a motion for extension of time to designate a joint screening panel member, which the district court granted.

Again, for the same reason, on June 1, 2004, Dr. Regehr filed a second motion for extension of time. The plaintiffs also filed a motion for extension to file their contentions with the panel. On July 1, 2004, the district court granted both motions and extended both deadlines as requested.

Despite the fact that neither of the screening panels had yet issued an opinion, the court set a jury trial for June 14, 2005. The district court also ordered that witnesses and exhibits listed by one party could be called by any other party. Dr. Regehr listed the "Screening Panel decision" as one of his exhibits and "[a]ll screening panel physicians" as possible witnesses.

Sometime later, all of the people picked by the plaintiffs for the screening panels disqualified themselves from participating in the screening process. When their replacements were not immediately forthcoming, Dr. Regehr asked to delay the trial. The plaintiffs asked to dissolve the panels because the date for the jury trial was fast approaching. The court then set the trial over to October 11, 2005, and ordered the plaintiffs to designate new members for both panels. Still with no reports from either panel, the court once again set the trial over, this time to May 30, 2006.

Finally, in January 2006, the anaesthesia screening panel issued its opinion. The panel found that Dr. Tabor did not depart from the standard of practice and that his actions did not cause the death

of Sheena L. Walker. The findings of the anesthesia panel opinion were clear:

"(4) As to plaintiff's [sic] claims against defendant Regan Tabor, M.D., the panel finds that Dr. Tabor did not depart below the required standard of practice in this case and that no act of or omission by defendant caused or contributed to cause injury to and/or the death of Sheena L. Walker."

At Dr. Tabor's request, the report of the panel was listed as an exhibit and the members of the panel were listed as witnesses for the jury trial. The court overruled the plaintiffs' objection to timeliness of the request.

*The surgeon asked to disband the surgery screening panel, but the plaintiffs objected.*

Dr. Regehr asked to withdraw his request for a surgery screening panel on April 28, 2006, but the plaintiffs objected to Dr. Regehr's motion. When this matter was considered by the court, the plaintiffs' counsel argued that the panel's report should come in:

"Dr. Regehr — who had been requesting multiple continuances — suddenly wants to withdraw the panel.

"And yes, Your Honor, we go 180, too, but we were asked to invest in this process, this panel process, and we had invested in it. We were forced to, over the course of a year, delays of the trial for over a year. We ought to be entitled to the payout now. We had to invest in this process and if we were the winners, gosh, we want that report. Yes, now we want the panel."

After discussing this matter with the judge who made the initial rulings regarding the screening panels in this case, the district court ruled against Dr. Regehr's request. The district judge stated:

"Well, I took the liberty to talk to Judge Friedel again to see what, if anything, could be done to light a fire under [the chairperson of the surgery screening panel]. Judge Friedel assured me he has done everything in his power . . . [and] there is nothing that can be done to speed up the process.

. . . .

"But the long and short of it is the panel that has the decision, the statute says it [, the anaesthesia panel opinion,] shall be admissible. I don't think I can withdraw the one, and we have to wait to see if this other, however tardy the panel's decision comes in, that when it does come in, it is admissible, as well, and it may be midstream in the trial. It may be by Tuesday. I don't know. It is kind of a procedural quandary, but the statute says it shall be admissible. We have one that is finalized, signed off on, and that is clearly admissible. It would probably be

error to withdraw that. And when this [surgery panel opinion] one comes in, however late or tardy, it shall be admissible and it may — so I guess, yes, you have made opening statements, started the trial, and this comes in. I guess you have to make your opening statements and present your evidence with the possibility that this panel's decision is going to be finalized and will come in mid trial and everybody will learn about it for the first time. So I guess you need to kind of hedge your bets on how you make your opening and how you present your evidence."

On May 30, 2006, the jury selection process started. On that day, Dr. Regehr's counsel revealed he had received an electronic version of the surgery panel's draft opinion but that he had not yet reviewed it. The plaintiffs then asked the court for authority to issue subpoenas to the screening panel members, even though the members were located more than 100 miles away. Dr. Regehr's counsel objected on jurisdictional grounds. Instead of ruling on the matter, the district court stated that it would do independent research into the subject. The record does not disclose whether a decision was ever made on that issue. After the surgery panel opinion was issued, however, it does not appear that the plaintiffs tried to issue subpoenas to the voting members of the screening panels.

On June 15, 2006, the surgery screening panel issued its opinion. The panel concluded that Dr. Regehr "did not depart from the standard of care in his pre-operative, surgical, and/or post-operative care and treatment of the patient Sheena Walker and that no improper act of or omission by Dr. Regehr caused or contributed to cause injury to and/or the death of the patient."

After the admission of all of the evidence, including both screening panel reports, the jury entered a no fault verdict.

*We dispose of any complaints about the surgery screening panel as invited error.*

At first, the plaintiffs consistently resisted the appointment of a medical malpractice screening panel, let alone two. But as the case progressed, the record displays a change of mind. " 'Where a party procures a court to proceed in a particular way thereby inviting a particular ruling, that party is precluded from assailing such proceeding and ruling on appellate review.' [Citations omitted.]" *In re Estate of Broderick*, 34 Kan. App. 2d 695, 708, 125 P.3d 564 (2005).

Here, Dr. Regehr filed a pretrial motion to dismiss his request for a surgery screening panel. But, at the May 26, 2006, pretrial motions hearing, the plaintiffs argued against Dr. Regehr's request. Admittedly changing positions, the plaintiffs stated the estate had invested in the process, was entitled to the "payout," and now wanted that opinion. Later in that hearing, the district court ruled against Dr. Regehr's request. However, once the parties received the surgery panel opinion disfavoring the plaintiffs, the plaintiffs again objected to the admission of that opinion on June 1, 2006. Relying upon the earlier rulings on this issue, the district judge stated he was unwilling to exclude such evidence from trial, reasoning: "I'm not going to go back and revisit the timing of the request. It's been ruled upon by another judge and I'm not going to sit here in an appellate position and undo the law of the case established by a prior judge on that issue."

We deem the circumstances of this case unusual with respect to the reception of the surgery panel report during trial. But, based on these facts, any error in admitting the surgery panel's opinion into evidence was invited by the plaintiffs, precluding this court from reviewing the due process issue about the surgery panel on appeal. The plaintiffs led the district court into ruling that the surgery panel opinion would be admissible in trial. Thus, under the ruling in *Estate of Broderick*, the plaintiffs cannot argue on appeal that the surgery panel opinion should never have been accepted.

*After discussing some principles of due process of law, we examine the law of medical malpractice screening panels.*

In order to evaluate the plaintiffs' due process arguments, it is important to review some fundamental points of law. Due process is embodied in § 18 of the Kansas Constitution Bill of Rights and reads: "Justice without delay. All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." The due process provision of the United States Constitution is found in the Fourteenth Amendment, which provides in pertinent part that no state shall "deprive any person of life, liberty, or property, without due process of law." See *Injured Workers of Kansas v. Franklin*, 262

Kan. 840, 853-54, 942 P.2d 591 (1997). We primarily review the due process contentions because the plaintiffs, as far as we can tell, never asked for the report of the anesthesia panel to be admitted but maintained their objection to the panel.

Moving on to the general concept of screening panels, it is clear that the purposes and procedures of the Kansas Medical Malpractice Screening Panels Act, K.S.A. 65-4901 *et. seq.*, are straightforward and not complicated. "[The Act] was enacted to provide for the early resolution of many medical malpractice claims without the expense and delay of actual litigation. [Citation omitted.]" *Smith v. Graham*, 282 Kan. 651, 657, 147 P.3d 859 (2006). Importantly, a medical malpractice screening panel is not an administrative body created by law to administer, interpret, or enforce the law. Rather, the Medical Malpractice Screening Panels Act provides a procedure where individuals trained in the field of medicine confer and furnish an impartial determination of whether the health care provider departed from the standard of care in a way which caused the claimant damages. *Lawless v. Cedar Vale Regional Hosp.*, 252 Kan. 1064, 1071, 850 P.2d 795 (1993).

K.S.A. 65-4901 authorizes a screening panel to be convened when a medical malpractice petition is filed in district court and one of the parties to the action makes such a request by filing a memorandum. *Smith*, 282 Kan. at 658. "If the plaintiff and the defendant . . . are unable to jointly select a health care provider within 10 days after receipt of notice that a screening panel has been convened, the judge of the district court or . . . the chief judge of such court shall select such health care provider." K.S.A. 65-4902. "Within 90 days [now 180 days] after the screening panel is commenced, the panel shall make written recommendations on the issue of whether the health care provider departed from the standard of care in a way which caused the plaintiff or claimant damage." K.S.A. 65-4904(a); see K.S.A. 2008 Supp. 65-4904(a) (amended L. 2008, ch. 80, sec. 7).

Details on how the law is implemented are found in Supreme Court Rule 142 (2008 Kan. Ct. R. Annot. 227). Relevant here is Rule 142(d)(10), describing the information the screening panel shall include in its written opinion.

"(10)The screening panel shall prepare a written report of its findings. . . . The opinion . . . shall:

. . . .

"B.  state whether there was a departure from the standard practice of the health care provider specialty or profession involved and the facts in support of a finding of a departure, if any is found;
"C.  if a departure is found, state whether a causal relationship exists between the claimed injury sustained by the plaintiff and such departure. If a causal relationship is found, state the facts in support of such causal relationship; or
"D.  if the screening panel is unable to make a finding of either no departure or no causal relationship or both, so state giving the reasons therefor." Rule 142(d)(10) (2008 Kan. Ct. R. Annot. 230-31).

Using this information as our foundation, we will now address the plaintiffs' due process arguments.

*The plaintiffs complain about undue delay of the trial, an unfair hearing, and the prejudicial findings of no "causation" by the panels.*

Highly summarized, the plaintiffs offer three due process arguments. The plaintiffs claim violations under the Fourteenth Amendment to the United States Constitution and § 18 of the Kansas Constitution Bill of Rights by (1) the admission of the surgery panel's opinion caused undue delay of the trial; (2) the hearing was unfair because the members of the panel were not present in the courtroom and available for cross-examination; and (3) both screening panels went beyond their statutorily authorized findings by also determining that there was no causation. We will address those contentions in that order.

*Delay*

Obviously, the screening panels took far longer to do their work than the 90-day time frame outlined in K.S.A. 65-4904(a). One case from our court has addressed this period. *White v. VinZant*, 13 Kan. App. 2d 467, 473-74, 773 P.2d 1169 (1989), interpreted the 90-day time provision in this statute to be directory and not mandatory.

"[W]e conclude that a screening panel is not prohibited from taking more than 90 days from the date of its commencement to make its written recommendations. K.S.A. 1988 Supp. 65-4904(a) uses the word 'shall' in referring to the panel's

issuance of recommendations within 90 days. The word 'shall' can be directory rather than mandatory when it is (1) not accompanied by negative words indicating the specific acts can be done in no other manner; or (2) no consequences of noncompliance are included. [Citation omitted.]. K.S.A. 1988 Supp. 65-4904(a) contains neither negative words nor the consequences of noncompliance. Thus, the legislature has directed screening panels to issue their recommendations within the 90-day period but has not totally prohibited a panel from issuing its recommendations outside of this time period." *White*, 13 Kan. App. 2d at 473-74 (finding that the 90-day provision of K.S.A. 1988 Supp. 65-4904[a] should not be incorporated into the tolling provision of K.S.A. 65-4908 [Ensley 1985]).

The plaintiffs, admitting the ruling in *White* weighs against their argument, turn to *Martindale v. Tenny*, 250 Kan. 621, 829 P.2d 561 (1992), and *Roy v. Young*, 278 Kan. 244, 93 P.3d 712 (2004), as support. But those two cases offer scant help.

In *Martindale*, 250 Kan. at 630-31, which *Roy* upheld, the court found that K.S.A. 65-4905 stays the civil proceedings until the screening panel procedure has been exhausted. See *Martindale*, 250 Kan. 621, Syl. ¶ 7 (finding that "the filing of a request for medical malpractice screening panel to consider a claim for malpractice" under the provisions of the Medical Malpractice Screening Panels Act "constitutes a 'claim filed' as contemplated by K.S.A. 40-3403[h]"); *Roy*, 278 Kan. at 250-51.

"With regard to the interplay of K.S.A. 65-4905 and K.S.A. 65-4908, the court stated in *Martindale*:

'K.S.A. 65-4905 contemplates there will be no formal court action once a screening panel has been requested and K.S.A. 65-4908 tolls any applicable statute of limitations "until thirty (30) days after the screening panel has issued its written recommendations." Thus the act contemplates that no formal court action should be filed, or if an action has been filed that it be held in abeyance, until the parties have exhausted the screening panel procedure.' 250 Kan. at 630-31." *Roy*, 278 Kan. at 250-51 (upholding this statement in *Martindale* even though it was dicta).

The facts of this case distinguish it from *Martindale* and *Roy*. Here, the district court's February 4, 2004, minutes order indicates that the discovery in the case continued and was not stayed. Nothing about the delay kept the plaintiffs from taking whatever steps were needed to discover the facts, investigate, preserve testimony, and conduct research. Also it is clear the district court had authority to continue the case rather than stay the proceedings under Su-

preme Court Rule 142(d)(1): "The judge *may* enter an order partially or completely staying discovery pending the report of the screening panel." (Emphasis added.) (2008 Kan. Ct. R. Annot. 228.) Therefore, the law permitted the district court to do what it did. By following the law, the court did not violate due process.

What the plaintiffs really complain about is the continuances of the jury trial. Under K.S.A. 60-240(b), "[t]he court may for good cause shown continue an action at any stage of the proceedings upon such terms as may be just." The granting of a motion for continuance rests within the sound discretion of the trial court, and it will not be disturbed on appeal in the absence of a clear showing of abuse. *Security National Bank v. City of Olathe*, 225 Kan. 220, 222, 589 P.2d 589 (1979).

In this case, the district court continued the trial for two reasons. First, the plaintiffs' designees for each of the screening panels had disqualified themselves. Second, once the panels were designated and working, the screening panels' opinions remained unissued. K.S.A. 65-4904(a) at that time directed screening panels to issue their recommendations within a 90-day period. But the law does not prohibit panels from issuing their recommendations outside this time period. Therefore, we can see this as a legitimate reason for a trial court to delay a trial.

Therefore, in light of the fact that discovery was ongoing and all normal pretrial preparations were not stayed, we hold the district court did not abuse its discretion by continuing the trial for the purpose of receiving the screening panels' opinions. Since there was no abuse of discretion, we see no due process of law violation by the delay.

### Unfair Hearing

The plaintiffs next claim that the hearing was unfair because they were unable to fully cross-examine the members of the screening panels at trial. Specifically, the plaintiffs claim that the "unsigned panel report purporting to contain statements and opinions of the panel members was double hearsay." Therefore, because none of the members were present in the courtroom for cross-examination, the plaintiffs argue that the screening panels' opinions were hear-

say and, thus, wrongly admitted, violating their due process rights to a fair hearing.

This criticism rings hollow under the facts of this case. The plaintiffs never attempted to subpoena the members of the screening panels for trial. Furthermore, we find nothing in the record that shows the district court prohibited such an action. Instead, the record reveals that the plaintiffs tried only to subpoena the chairperson of the screening panels for the purpose of motivating the chairperson to issue the surgery panel opinion. Going further, the plaintiffs failed to base their objections at trial to the admission of these opinions as hearsay. Since the plaintiffs do not show that they were denied the opportunity to subpoena the anesthesia panel members for trial, the plaintiffs have failed to demonstrate that they did not receive a fair hearing, in contrast with *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, 168-69, 955 P.2d 1169 (1998), which discussed *Linder v. Smith*, 193 Mont. 20, 629 P.2d 1187 (1981). In both of those cases, the plaintiff was unable to cross-examine panel members. Here, the plaintiffs had the ability but failed to use it. Failure to follow a procedure cannot be considered a due process violation.

### Finding Causation

Finally, the plaintiffs argue that the screening panels' findings of "no causation" were prejudicial. But, at the March 16, 2004, hearing where the district court directed the panel opinions to include a finding of causation, the plaintiffs did not object to the court's ruling. Accordingly, because issues not raised before the trial court cannot be raised on appeal, the plaintiffs have failed to preserve this issue for review. See *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007).

### Via Christi is not affected by the claims of the appellants.

We agree with Via Christi when it argues that the plaintiffs' arguments on appeal only pertain to Drs. Regehr and Tabor. The screening panels' reports had nothing to do with the claims against the medical center. The admission of the reports did not benefit

Via Christi's defense or harm the plaintiffs' case against it. Any judgment made in favor of Via Christi is affirmed.

Affirmed.