NOT DESIGNATED FOR PUBLICATION

No. 119,856

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
DORIS A. STEWARD.

MEMORANDUM OPINION

Appeal from Mitchell District Court; DEBRA J.G. WRIGHT, magistrate judge. Opinion filed
October 4, 2019. Affirmed.

*Mary Leidig*, appellant pro se.

*William R. Thompson*, of Condray & Thompson, LLC, of Concordia, for appellee Kathleen
Walker.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Mary Leidig appeals the district magistrate judge's order dismissing
her pro se petition which simultaneously sought to probate her mother's will and contest
it. Leidig raises six issues on appeal. She contends the trial court should have continued
the hearing on her petition, and allowed her non-attorney cousin to sit at counsel table
during the hearing. Leidig also asserts the trial court erred by requiring her to testify
against herself. Next, Leidig claims the judge was biased against her and unfairly
evaluated the form of her pleadings rather than the substance. Finally, Leidig contends
the trial court should have ruled that her sister, Kathleen Walker, was in a confidential
relationship with her mother and suspicious circumstances indicated that she exerted
undue influence on the creation of her mother's 2014 Will.

1

Upon our review we find no reversible error and, therefore, affirm the trial court's dismissal of Leidig's petition.

FACTUAL AND PROCEDURAL BACKGROUND

Doris A. Steward had four children: Leidig, Walker, Deanna Larson, and Kevin Steward. Doris executed a will in November 2014 (2014 Will), which gave the entirety of her estate in three equal shares to Walker, Larson, and Kevin. The 2014 Will explicitly disinherited Leidig, stating that it was Doris' "specific intention to make no provision for [her] daughter, Mary (Burleigh) Leidig." The 2014 Will nominated Larson and Walker as co-executors.

Doris passed away in December 2015. On February 22, 2016, Walker timely filed the 2014 Will and an affidavit under K.S.A. 2015 Supp. 59-618a to preserve the will for the record in the event of formal probate proceedings. In the affidavit, Walker averred that Doris' estate contained no real property and the value of the estate was less than the demands allowed against it.

In November 2017, Leidig filed a pro se pleading which concurrently petitioned to probate the 2014 Will, contest it, and set it aside. In support of her petition, Leidig asserted that Walker failed to properly perform her duties as Doris' power of attorney. Leidig also claimed that Walker and her husband exerted undue influence over Doris, causing her to amend her will and disinherit Leidig.

Walker denied the allegations in Leidig's petition. She also sought dismissal of Leidig's petition because Doris left no property or assets that required probate proceedings.

2

The district magistrate judge set a hearing on the petition for January 8, 2018. Leidig requested a continuance to February 2018, however, because she recently had major surgery. The trial court granted the continuance and reset the hearing "on all motions pending" for February 26, 2018.

Prior to the hearing, Leidig filed a notice that she intended to issue business record subpoenas to several nonparties. Walker objected and moved to quash the subpoenas.

At the start of the February hearing, Leidig requested that her cousin and limited power of attorney, Billie Payne, sit at counsel table and help her take notes. Because Payne was not a licensed attorney, the trial court required her to sit in the gallery. The trial court then considered Leidig's petition challenging the validity of the 2014 Will. The trial court explained that it would decide whether to probate the 2014 Will before reaching the other matters.

Leidig argued that Walker and her husband placed undue influence on Doris by isolating her from Walker's siblings. Leidig believed the Walkers wanted Doris to exclude her from receiving property under the 2014 Will. Leidig testified that Walker moved Doris to multiple facilities and refused to inform family members where she was living. Leidig claimed the Walkers insured that she had no communication with Doris. She also stated that Walker was named a co-owner of Doris' checking account and received money from the account when Doris died.

When Leidig asked the trial court whether she should expand on certain arguments, the judge explained that she could not tell her what evidence to present but "this is your opportunity to bring evidence." Leidig clarified that one of Doris' previous wills treated all four children equally and she claimed that pressure was placed on Doris to write the 2014 Will. Although Leidig kept a copy of the earlier will, she did not bring

it to court because she "didn't realize [she] had to go through all of this." Leidig understood the hearing was only held "to address the subpoena, et cetera."

Walker's attorney explained the relationship between Leidig and Doris. Doris had lived with Leidig for about a year, but eventually Doris sued Leidig to recover personal property from Leidig. Walker explained that this resulted in hard feelings and caused Doris to exclude Leidig from her will.

Walker contended that the 2014 Will should not be admitted to probate because:

- Leidig's petition lacked verification as required by K.S.A. 59-2201. It also failed to meet the requirements of K.S.A. 59-2202, which requires a statement of jurisdictional facts and facts showing the petitioner is entitled to relief.
- If Leidig is attempting to make a claim against the estate, the six-month period under K.S.A. 59-2239(1) to file a petition to probate the decedent's will had expired.
- Leidig's petition failed to meet the requirements of K.S.A. 59-2220 because it did not include: (1) the identification of devisees and legatees; (2) an estimated value of the probate assets; (3) an accompanied will; (4) identification of the person named as executor; and (5) identification of the scrivener of the will.
- Leidig lacked standing because she was not a beneficiary nor seeking appointment as executor.
- No probate assets had been found.

In response to this last claim, Leidig stated, "Well there may or may not be any assets. But this is—this is not fair what they did to my mother." Leidig conceded that Doris may have been upset with her, but she claimed the Walkers tried to prevent a reconciliation. Leidig believed that if she and Doris had reconciled, then Doris would not have disinherited her.

4

After considering the evidence and arguments, the trial court denied Leidig's petition to probate and challenge the 2014 Will. The trial court ruled that the 2014 Will did not require probate. The trial court also found that Leidig failed to show that Walker unduly influenced Doris to alter the will. Instead, the trial court found the allegations of the litigation between Leidig and Doris was "compelling . . . evidence" against undue influence and provided an appropriate explanation for why Doris executed a new will which disinherited Leidig.

Finally the trial court explained that Leidig presented several issues not relevant to admitting a will to probate. The trial court noted that it provided Leidig leeway in her pleadings, but she failed to satisfy certain essential procedural requirements. The judge explained that "by hearing your testimony here today, I understand what you were trying to request. I just don't think you have sufficient evidence to meet the burden in that particular matter." As a result, Leidig's action was dismissed.

After the trial court filed a journal entry dismissing the case, Leidig filed a motion for a rehearing. The trial court denied Leidig's posttrial motion, noting that it had given her "several opportunities to demonstrate appropriate jurisdictional matters and meet her burden of proof." The trial court explained that it accommodated Leidig by modifying the proceedings, allowing her to amend her pleadings, and asking her questions in an effort to establish a jurisdictional basis for the petition.

Leidig appeals.

ANALYSIS

Leidig raises numerous issues on appeal which we will address individually.

*Failure to Grant a Continuance*

Leidig contends the trial court erred when it failed to continue the February 26, 2018 hearing on her petition. While Leidig admits she never requested a continuance, she argues the trial court should have continued the hearing when she informed it that she was unprepared.

The decision to grant or deny a continuance rests in the sound discretion of the trial court. K.S.A. 2018 Supp. 60-240(c)(3). As a result, a trial court's refusal to grant a continuance will not be disturbed on appeal absent an abuse of discretion. *Walker v. Regehr*, 41 Kan. App. 2d 352, 365, 202 P.3d 712 (2009). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Consolver v. Hotze*, 306 Kan. 561, 568-69, 395 P.3d 405 (2017). As the party asserting an abuse of discretion, Leidig bears the burden of establishing the error. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

When presenting evidence to support her petition to probate and challenge the 2014 Will, Leidig stated she did not realize she needed to "get into all this" at the hearing. She explained that she understood the February hearing was to address her subpoenas. On appeal, Leidig suggests the trial court should have sua sponte continued the hearing based on her statements. Leidig does not allege an error of law or fact, so we consider whether the trial court's inaction was unreasonable.

The trial court's inaction to initiate a continuance based on Leidig's lack of preparation was reasonable despite Leidig's indications that she was unaware the hearing would address her requests to probate and challenge the 2014 Will. The trial court's orders setting the hearing clearly stated that the hearing would address Leidig's claims. Although the trial court originally scheduled the hearing on Leidig's petition for the prior

6

month, the hearing was continued to February 26, 2018, and it was noted that the judge would address all pending motions, which included Walker's request to dismiss Leidig's petition. Leidig should not have been confused about the purposes of the hearing. Moreover, other than possibly providing a copy of the earlier will, Leidig does not explain what relevant evidence she would have produced if she had been prepared for the hearing.

Finally, Leidig understood she could request a continuance but declined to ask. Indeed, she had previously requested and received a continuance of the hearing. The trial court did not abuse its discretion by failing to sua sponte grant Leidig a second continuance of the hearing on her petition.

*Refusal to Allow Payne to Sit at Counsel Table*

Next, Leidig contends the trial court erred by denying her "indirect[]" request for an accommodation to allow her cousin to sit with her at counsel table to take notes. Leidig suggests the accommodation was necessary because she has difficulty grasping new material and multitasking.

The trial court's decision to prohibit a nonparty from sitting at counsel table is reviewed for abuse of discretion. See *State v. Sampson*, 297 Kan. 288, 292, 301 P.3d 276 (2013); *Wilmer v. Bd. of County Com'rs of Leavenworth County*, 153 F.R.D. 165, 169 (D. Kan. 1993). Again, Leidig bears the burden to show the error. *Gannon*, 305 Kan. at 868.

At the hearing, Payne informed the trial court that she was Leidig's cousin, and Leidig clarified that Payne was her limited power of attorney. The trial court informed Leidig that a limited power of attorney did not give Payne the right to represent Leidig. But the trial court informed Payne that if she was there for moral support, she would need

to sit in the gallery. After Leidig stated that Payne was present to assist her with taking notes, Payne was required to sit in the gallery for that purpose.

On appeal, Leidig cites no legal authority to suggest that the trial court erred. Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). The failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). Likewise, Leidig fails to explain how the trial court's actions prejudiced her case. Our court must disregard an error if it does not affect a party's substantial rights. K.S.A. 2018 Supp. 60-261; K.S.A. 60-2105.

Moreover, unlike on appeal, Leidig never informed the trial court that Payne's assistance was needed to accommodate any disability or infirmity that affected Leidig's ability to represent herself. Still, the trial court's ruling did not prevent Payne from taking notes for Leidig while she was sitting in the gallery. See *United States v. Betts-Gaston*, 142 F. Supp. 3d 716, 733 (N.D. Ill. 2015) (finding a court's ruling that defense counsel's non-attorney assistant could not sit at counsel's table did not deny defendant a fair trial when the court did not bar the assistant from aiding defense counsel with documents from the gallery). The trial court did not err by not allowing Payne to sit at counsel table.

*Requiring Leidig to Testify Against Herself*

Leidig contends the trial court erred by requiring her to testify against herself. She intimates that the trial court violated her privilege under K.S.A. 60-425 to refuse to disclose any matter that would incriminate her. Interpretation of a statute is a question of law over which we have unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015).

8

At the hearing, the trial court informed Leidig she had the burden to show that her requested relief should be granted. After Leidig agreed to start the hearing by addressing her petition, the trial court administered an oath to her. Leidig testified in support of her petition.

As a general rule, "no person has a privilege to refuse to be a witness" and "no person has a privilege to refuse to disclose any matter." K.S.A. 60-407. An exception to this rule is the constitutional guarantee of the right against self-incrimination in the Fifth Amendment to the United States Constitution, which is echoed in the Kansas Constitution and K.S.A. 60-425. *In re Investigation into Homicide of T.H.*, 23 Kan. App. 2d 471, 474, 932 P.2d 1023 (1997). Under K.S.A. 60-425, "every natural person has a privilege, which he or she may claim, to refuse to disclose in an action . . . any matter that will incriminate such person." See K.S.A. 60-424. In essence, both as a constitutional and statutory matter, a person acting as witness may not be compelled to give testimony which might tend to show that the person committed a crime.

Importantly, Leidig fails to identify any testimony suggesting that she committed a crime, and we can discern none. Regardless, Leidig never invoked her privilege against self-incrimination. This privilege is "waived when an individual voluntarily testifies on his or her own behalf." *City of Liberal v. Witherspoon*, 28 Kan. App. 2d 649, 652, 20 P.3d 727 (2001). As a result, even if Leidig had mentioned something incriminating in her testimony, she waived her privilege against self-incrimination in K.S.A. 60-425.

The trial court did not err by requiring that Leidig establish her claims through sworn testimony.

9

*Exhibiting Bias and Unfairness Toward Leidig*

Leidig claims error because the district magistrate judge exhibited bias and prejudice against her. In support, Leidig asserts the judge (1) never asked Walker's counsel about the suspicious circumstances in the relationship between the Walkers and Doris, (2) altered the audio recording of the hearing on Leidig's petition, (3) refused to schedule a hearing on Leidig's objections to the proposed journal entry, and (4) sounded upset with Leidig's motion for rehearing.

Our court exercises unlimited review over a party's allegations of judicial bias to determine whether the facts rise to the level of judicial misconduct. *State v. Kemble*, 291 Kan. 109, 113, 238 P.3d 251 (2010). The party alleging judicial misconduct bears the burden of establishing that misconduct occurred and that it prejudiced the party's substantial rights. *State v. Hudgins*, 301 Kan. 629, 637-38, 346 P.3d 1062 (2015). When a party asserts a lack of judicial impartiality, our court considers whether the assertion is grounded in facts that would create reasonable doubt about the court's impartiality in the mind of a reasonable person with knowledge of all the circumstances. *Smith v. Printup*, 262 Kan. 587, Syl. ¶ 8, 938 P.2d 1261 (1997).

The fact that a trial judge ruled against a party presents a legally insufficient basis to find that the judge exhibited bias or prejudice against that party. *Hajda v. University of Kansas Hosp. Auth.*, 51 Kan. App. 2d 761, 777, 356 P.3d 1 (2015). When considering judicial comments, a remark will not be found prejudicial if a proper and reasonable construction renders the remark unobjectionable. *Kemble*, 291 Kan. at 113. To warrant a new trial, judicial conduct must appear to prejudice the substantial rights of the complaining party. The mere possibility of prejudice is insufficient to overturn a verdict or judgment. *State v. Walker*, 308 Kan. 409, 419, 421 P.3d 700 (2018).

Leidig fails to allege facts showing the trial judge committed judicial misconduct or that any misconduct affected her substantial rights. Leidig provides no argument or authority suggesting the trial court should have questioned Walker's counsel about the suspicious circumstances that she alleged at the hearing. Again, issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 at 977.

Next, Leidig claims the trial judge altered and deleted portions of the audio recording of the hearing. Leidig states she discovered the altered recording when she received the printed transcript of the hearing. Leidig asserts that, when addressing whether Payne could sit with her, the trial judge said "I find you competent." But Leidig points out this statement was not included in the transcript. Leidig also alleges that some of the trial judge's statements about not understanding the relief Leidig requested in her petition were either modified or not included in the transcript. Still, Leidig fails to explain how any of these errors in the transcript or manipulations of the audio recording suggest a bias or prejudice against her. Additionally, Leidig claims no prejudice to her substantial rights which resulted from any judicial misconduct.

With regard to the trial judge's refusal to set a hearing on Leidig's objections to the proposed journal entry, Leidig did not request a hearing to resolve her objections to the journal entry. Moreover, Supreme Court Rule 170(d)(3) (2019 Kan. S. Ct. R. 222) provides that if the parties do not agree on the terms of a prepared order, the court may settle the order without a hearing.

Finally, as to Leidig's claims that the trial judge "sounded really upset" after she filed a motion for a rehearing, Leidig does not indicate what the judge said or did that indicated that the judge was upset or otherwise biased against her. As a result, we are unable to assess whether any of the trial judge's comments or actions regarding Leidig's motion for a rehearing suggested prejudice. In short, Leidig fails to establish the trial

11

judge was unfairly biased against her or that any judicial misconduct affected her substantial rights.

*Use of Improper Standards to Consider Leidig's Pleadings*

Leidig argues that the trial court improperly evaluated her pro se pleadings. Specifically, she argues that "[i]t seemed that the Court and opposing attorney were more concerned about whether [Leidig's] court document was [in] perfect form versus what [Leidig] was trying to say." "Whether the district court correctly construed a pro se pleading is a question of law subject to unlimited review." *State v. Parks*, 308 Kan. 39, 42, 417 P.3d 1070 (2018).

Kansas courts liberally construe pro se pleadings to give effect to the pleading's content rather than the labels and forms used to articulate the defendant's arguments. 308 Kan. at 42. Nevertheless, a pro se litigant must follow the same procedural rules as a litigant who is represented by counsel. *Leffel v. City of Mission Hills*, 47 Kan. App. 2d 8, 21, 270 P.3d 1 (2011). The reason for this is simple but important:

> "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 (1986).

As the trial court noted, Leidig's pleadings failed to comply with Kansas law. Her petition was not verified as required by K.S.A. 59-2201. The petition did not state the

jurisdictional facts as required by K.S.A. 59-2202. The petition also failed to satisfy many requirements in K.S.A. 59-2220 for a petition to probate a will. These pleading requirements are established by statute and should be complied with in order to properly present the petition for probate. Since a pro se litigant in a civil case must follow the required procedural rules, the trial court appropriately pointed out the defects in Leidig's pleadings and found that it could have denied Leidig's petition based on those procedural defects.

Still, while the trial court noted the defects in Leidig's pleadings, it provided Leidig a hearing on her petition and denied it on the merits. As a result, assuming the trial court used overly stringent standards when considering Leidig's pro se pleadings, the error was harmless and not reversible. See K.S.A. 2018 Supp. 60-261.

*Failure to Find No Undue Influence*

Finally, Leidig contends the trial court erred because it "did not see that [Walker] was in a confidential relationship with Doris and that [the Walkers] had numerous suspicious circumstances." Leidig cites caselaw suggesting that a person may establish a presumption of undue influence by showing: (1) a confidential relationship between the decedent and alleged wrongdoer, and (2) suspicious circumstances regarding the 2014 Will.

When the trial court makes findings of fact and conclusions of law, this court examines whether the factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's legal conclusions. *City of Wichita v. Denton*, 296 Kan. 244, 255, 294 P.3d 207 (2013). Substantial competent evidence is such legal and relevant evidence as a reasonable person could accept as being sufficient to support a conclusion. *Cresto v. Cresto*, 302 Kan. 820, 835, 358 P.3d 831 (2015). When reviewing whether substantial evidence supports the trial court's findings,

13

our court does not reweigh the evidence or pass on the credibility of witnesses. 302 Kan. at 835.

A trial court's finding that a will was not the product of undue influence is a negative finding which indicates the party with the burden of proof failed to sustain that burden. *In re Estate of Farr*, 274 Kan. 51, 69, 49 P.3d 415 (2002). When reviewing a negative finding, our court considers whether the trial court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice to reach its determination. *Hamel v. Hamel*, 296 Kan. 1060, 1078, 299 P.3d 278 (2013).

Once it is established that a will was executed in accordance with the necessary legal formalities, the burden shifts to the will contestant to overcome the presumption of validity by clear, satisfactory, and convincing evidence. *Cresto*, 302 Kan. at 831. Leidig sought to overcome the presumption of validity by arguing that the 2014 Will was the product of undue influence by Walker. Our Supreme Court has defined undue influence as "'such coercion, compulsion or constraint that the testator's free agency is destroyed, and by overcoming his power of resistance, the testator is obliged to adopt the will of another rather than exercise his own.'" 302 Kan. at 832 (quoting *In re Estate of Kern*, 239 Kan. 8, 16, 716 P.2d 528 [1986]).

Human desire, motive, and opportunity to exercise influence does not alone trigger an inference that a party exercised undue influence. Instead, evidence must exist that the alleged wrongdoer did exert undue influence and controlled the actions of the testator in a way that the instrument is not really the will of the testator. *Cresto*, 302 Kan. at 832-33. "'Undue influence, in order to vitiate the will of a decedent, *must directly affect the testamentary act itself.*'" (Emphasis added.) 302 Kan. at 833 (quoting *In re Estate of Bennett*, 19 Kan. App. 2d 154, 163, 865 P.2d 1062 [1993]).

14

A person contesting a will without direct evidence of undue influence can establish a presumption of undue influence by showing that: (1) "the person who is alleged to have exerted undue influence was in a confidential and fiduciary relationship with the testator" and, (2) "there were 'suspicious circumstances' surrounding the making of the will." *Farr*, 274 Kan. at 70-71. If a confidential relationship and suspicious circumstances are shown by clear and convincing evidence, a presumption of undue influence arises and the burden shifts back to the proponents of the will to rebut the presumption. 274 Kan. at 71.

In this probate case, the trial court did not state it was applying the two-prong burden shifting test but instead found that no evidence suggested that Walker unduly influenced Doris or her assets. The trial court concluded that the prior litigation between Doris and Leidig was compelling evidence of the actual reason why Doris executed a new will which disinherited Leidig.

On appeal, Leidig does not argue that the trial court applied an erroneous standard in evaluating her undue influence claim. Rather, she claims the trial court should have found that Walker was in a confidential relationship with Doris and that suspicious circumstances existed. "In the absence of an objection to inadequate findings of fact or conclusion of law, the trial court is presumed to have found all facts necessary to support the judgment." 274 Kan. at 71.

Leidig lists several allegations about Walker which she argues are suspicious circumstances:

"Suspicious circumstances are long time financial problems, no accounting of Doris' money, income, sale of assets, isolating Doris, nine moves in two and [a] half years in two states, Doris is feeble, forgetful, easily manipulated, [Walker was a] co-owner of

15

money accounts then kept the money when Doris died, Attorney and [Walker] not wanting to provide documents to siblings."

While Leidig's assertions may indicate a motive and opportunity to exercise influence, they do not suggest any undue influence directly affected the testamentary act of preparing and drafting the 2014 Will. Instead, the evidence showed that the 2014 Will reflected Doris' desires because she was upset with Leidig after her lawsuit to recover personal property from Leidig. The trial court appropriately relied on the prior litigation between Doris and Leidig as evidence negating the existence of suspicious circumstances surrounding the 2014 Will or rebutting any presumption of undue influence. Leidig fails to overcome this negative finding that the 2014 Will was not the product of undue influence. The trial court did not err in finding no undue influence.

Affirmed.